# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLON M. COLKER, M.D., an individual, and PEAK WELLNESS, INC., a Connecticut corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ANNE CALLIS, an individual, and HOLLAND LAW FIRM LLC, a Missouri limited liability company,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, CARLON M. COLKER, M.D., ("Dr. Colker"), and PEAK WELLNESS, INC. ("Peak Wellness"), by and through undersigned counsel, hereby sue Defendants, ANNE CALLIS ("Callis"), and HOLLAND LAW FIRM LLC ("Holland Law") (collectively, the "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. This action arises from Callis, an attorney and former judge, engaging in an extrajudicial campaign to disseminate false and defamatory statements concerning Plaintiffs, Dr. Colker and Peak Wellness (collectively, the "Plaintiffs").

2. Specifically, on October 15, 2024, following Callis's filing of an "Opposition to Defendants' Motion to Dismiss" on behalf of a plaintiff in an unrelated case that she and Holland Law represent, Callis issued a press release to national and international media outlets and held a press conference via YouTube, during which she disseminated false and defamatory statements about Plaintiffs.

3. These statements included, *inter alia,* claims that Plaintiffs engaged in unlawful and unethical medical practices, including but not limited to "forcing" a patient to accept

intravenous infusions, routinely breaking doctor-patient trust, allowing unauthorized access to medical records, and improperly withholding a patient's medical records.

4. The statements made on October 15, 2024 were published directly to the media. They were not made within the context of a judicial proceeding, including the filing of the Opposition, and are therefore not privileged.

5. The statements were patently false, and as discussed *infra*, Callis was undeniably aware of their falsity, as she was in possession of medical records that directly contradicted her claims.

6. Callis made these statements with actual malice, as evidenced by the fact that she is an attorney and former judge and thus knew the legal and ethical implications of her assertions.

7. She intentionally made these statements and others to prejudice the legal proceeding and inflict reputational harm on Plaintiffs.

8. The statements, published directly to the media, explicitly identified Plaintiffs and severely damaged their reputation in the community.

9. As a direct result of Callis's extrajudicial, unprivileged, and defamatory statements, Plaintiffs have suffered reputational damage, loss of professional standing, and financial injury, necessitating this action to seek redress for the severe and unwarranted harm inflicted upon them.

## THE PARTIES

10. Plaintiff DR. COLKER, is a natural person over the age of eighteen (18) and a resident of the state of Connecticut in the county of Fairfield County.

11. Plaintiff PEAK WELLNESS is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Greenwich, Connecticut.

12. Defendant ANNE CALLIS is a natural person over the age of eighteen (18) and, upon information and belief, is a resident of Illinois in the county of Madison.

13. Defendant HOLLAND LAW is a limited liability company organized under the laws of the State of Missouri, with its principal place of business in Saint Louis, Missouri.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the parties are diverse, and the amount in controversy is greater than seventy-five thousand dollars ($75,000.00).

15. The Court possesses personal jurisdiction over Defendants pursuant to Conn. Gen. Stat. § 52-59b(a)(1) on the grounds that Defendants, during the operative period alleged in the Complaint, engaged in substantial and not isolated business activities in Connecticut, and more specifically in this District.

16. In addition, this Court possesses personal jurisdiction over Defendants pursuant to Conn. Gen. Stat. § 52-59b(a)(3)(B) on the grounds that Defendants caused injury to Plaintiffs within this state arising out of an act or omission by Defendants outside this state, while at or about the time of the injury, Defendants were engaged in the solicitation or service of business within this state. By way of illustration, Callis, a Partner of Holland Law, regularly appears before this Court as an attorney and engages in legal practice within Connecticut.

## **STATEMENT OF FACTS**

### *Patient's Treatment at Peak Wellness*

17. Dr. Colker is a licensed medical professional and practicing physician with an established reputation in the field of medicine. Additionally, he is the founder and operator of Peak Wellness.

18. Peak Wellness is a fully accredited medical practice that provides comprehensive medical care, including wellness programs and traditional and integrative treatments. The medical practice operates in full compliance with state and federal medical regulations and adheres to the highest professional and ethical standards in the field.

19. Peak Wellness maintains all patient records electronically using the DrChrono electronic medical records (EMR) platform. Each chart note includes associated metadata reflecting the identity of the author, the precise date and time of creation, and the date and time the note was locked. The EMR platform ensures that patient medical records are accurate, complete, and securely maintained in compliance with applicable legal and regulatory standards.

20. Patient billing at Peak Wellness is processed contemporaneously with the provision of services, typically by credit card. Patients are billed for services rendered, as well as for late cancellations or missed appointments. Payment records, including "superbills" reflecting charges for each visit, are generated independently of clinical chart notes and maintained separately from the EMR system.

21. On November 22, 2019, an individual ("Patient") became a patient of Dr. Colker, seeking general health and wellness services at Peak Wellness.

22. Over the course of approximately two and a half years, Patient received medical care at Peak Wellness on at least sixty (60) occasions.

23. Throughout the duration of Patient's treatment at Peak Wellness, Patient actively participated in her treatment decisions and was consistently provided with comprehensive explanations of each treatment, including its purpose, ingredients, expected outcomes, and detailed instructions for all supplements and medications.

24. Her care was tailored to her specific medical issues, health goals, and supported by ongoing detailed assessments.

25. Peak Wellness maintained meticulous medical records, including physician notes, nursing notes, and infusion logs.

26. Peak Wellness' complete medical records of Patient, include time-stamped metadata verifying the authenticity and completeness of her treatment history and as discussed *infra*, are in Defendant's possession (the "Medical Records").

27. As evidenced in the Medical Records:

- At no point was Patient forced to undergo intravenous infusions.

- At no point was Patient ever administered or directed to take unknown substances by way of intravenous route, orally, or otherwise.

- At no point was Patient directed to take unlabeled drugs.

- At no point did Dr. Colker personally administer any injections to Patient.

- At no point did Patient report experiencing any adverse effects related to her treatments.

28. Moreover, the medical records do not support the assertion that Dr. Colker's care made Patient feel worse; to the contrary, they reflect ongoing improvement in her condition and a consistent, positive response to treatment.

29. On April 15, 2022, Patient's treatment at Peak Wellness concluded without any indication of dissatisfaction or concern regarding the care she received.

5

30. Plaintiffs have never withheld, and are not currently withholding, any of Patient's medical records in violation of federal or state law.

31. In fact, correspondence from Callis's local co-counsel confirms that she, on behalf of Patient, received the full electronic medical records of Patient's treatment at Peak Wellness. An email confirming receipt of the complete records is attached hereto as Exhibit **"A"**.

### *The WWE and McMahon Litigation Matter*

32. Prior to entering private practice, Callis served as the Chief Judge of the Third Judicial Circuit in Madison County, Illinois.

33. At all relevant times, Callis acted within the course and scope of her employment and/or agency with Holland Law and made the unprivileged statements in furtherance of Holland Law's representation of Patient.

34. On or about January 25, 2024, Callis, acting as legal counsel for Patient through Holland Law, initiated litigation against WWE and McMahon in the United States District Court for the District of Connecticut, styled as *Grant v. WWE, McMahon, et al.*, Case No. 3:24-cv-90 (the "WWE Lawsuit").

35. In the WWE Lawsuit, Callis, on behalf of Patient, asserted multiple causes of action, including violations of the Trafficking Victims Protection Act ("TVPA"), sexual battery, assault, and related claims.

36. The Lawsuit alleges that McMahon manipulated, coerced, and sexually abused Patient over an extended period, using his influence at WWE to facilitate and conceal his conduct.

37. Although Dr. Colker was not named as a defendant, the Complaint in the WWE Lawsuit repeatedly references him under the pseudonym "Celebrity Doctor" and refers to Peak Wellness as "Alternative Clinic."

38. On or about February 5, 2024, in relation to the WWE Lawsuit, Peak Wellness received a request for Patient's medical records from Callis, through Holland Law, requesting only the specific date range of January 1, 2021 to February 5, 2024. The February 5, 2024 medical records request is attached hereto as Exhibit **"B"**.

39. On or about March 5, 2024, Peak Wellness complied with this request and provided printed copies of Patient's medical records to Callis and Holland Law for the specific date range requested.

40. These records included date-stamped metadata and a complete set of chart notes corresponding to each treatment date. The records were sent via FedEx to Callis and Holland Law. A FedEx receipt confirming delivery on March 5, 2024, is attached hereto as Exhibit "**C**".

41. On or about March 20, 2024, Callis, through Holland Law, submitted a second request, this time seeking Patient's complete medical records from her first date of service (November 1, 2019) to March 20, 2024. The March 20, 2024 medical records request is attached hereto as Exhibit **"D"**.

42. On or about April 17, 2024, Peak Wellness again complied with the request, providing complete medical records via FedEx.

43. These records included date-stamped metadata and a full set of chart notes corresponding to each treatment date. A FedEx receipt confirming delivery on April 17, 2024, is attached hereto as Exhibit **"E"**.

44. On or about July 16, 2024, Peak Wellness' legal counsel, in connection with the WWE Lawsuit, sent the complete set of Patient's medical records in the format maintained in the DrChrono electronic medical records (EMR) system.

45.  That same day, Callis's local co-counsel confirmed receipt of the records via email. *See* Exhibit **"A"**.

### *The Pre-Suit Discovery Action*

46.  Separate from the WWE Lawsuit, on or about July 1, 2024, Callis, through Holland Law and on behalf of Patient, initiated a pre-suit discovery proceeding in Connecticut Superior Court (the "Pre-Suit Discovery Action").

47.  This Pre-Suit Discovery Action was not a lawsuit asserting substantive claims but rather a petition for discovery to investigate potential claims.

48.  On July 16, 2024—the same day Callis's local co-counsel confirmed receipt of Patient's complete medical records—Callis, through Holland Law and on behalf of Patient, filed a Bill of Discovery seeking additional records and information from Plaintiffs.

49.  Despite having received Patient's medical records—both in printed and electronic format, including date-stamped metadata—Callis, through Holland Law, falsely alleged in the Bill of Discovery that: *"To date, despite repeated requests, Dr. Colker and Peak Wellness have failed or refused to provide [Patient's] electronic medical records, including any associated metadata."*

50.  On August 29, 2024, Plaintiffs filed a Motion to Dismiss the Pre-Suit Discovery Action, arguing that the petition was baseless because all requested medical records had already been provided.

51.  On or about August 30, 2024, Peak Wellness and Dr. Colker's legal counsel once again sent the complete set of Patient's medical records to Callis's local co-counsel—this time in the specific electronic format that had been requested. A copy of the August 30, 2024 email correspondence is attached hereto as Exhibit **"F"**.

8

52. On October 15, 2024, Callis, through Holland Law and on behalf of Patient, filed an opposition to Plaintiffs' Motion to Dismiss (the "Opposition").

53. Notably, the Opposition contained no reference whatsoever to the defamatory statements Callis would later make in public forums.

### *The Press Release and Press Conference*

54. On October 15, 2024, immediately after filing the Opposition, Callis issued a press release via email to national and international media outlets (the "Press Release").

55. At all relevant times in issuing the Press Release and conducting the Press Conference, Callis was acting within the scope of her employment and/or agency with Holland Law and undertook such actions in furtherance of the firm's legal representation of Patient.

56. The Press Release included the following false and defamatory statements:

- "Imagine being at your most vulnerable, and the doctor you are told to see only makes you feel worse. ***Our filing today*** makes clear that Dr. Colker violated ethical and medical standards when ***he injected unknown substances*** into [Patient's] body and ***directed her to take unlabeled pills*** while dismissing her basic questions about those drugs. Peak Wellness owes [Patient] answers, and the clinic's secrecy and evasion must come to an end."

57. Shortly thereafter, Callis escalated her extrajudicial defamatory campaign by hosting a publicly broadcast press conference on YouTube (the "Press Conference").

58. During the Press Conference, Callis reiterated and expanded upon her prior false accusations, publicly stating:

- "Due to the abuse she suffered, [Patient] was desperate for medical help, and she trusted licensed professionals to approach her care with the utmost seriousness. Dr. ***Colker instead violated ethical and medical standards and routinely broke the doctor-patient trust*** integral to proper treatment."

- "At Peak Wellness, Dr. Colker who runs the clinic also ***directed [Patient] to take mystery pills*** daily and ***forced her to accept intravenous infusions of unknown contents.***"

9

- "***Dr. Colker was on McMahon's payroll and obtained access to [Patient's] private medical records***, dictated her treatment, and often ***coerced [Patient] into continuing her treatment*** at Peak Wellness."

- "We also know that she was ***getting progressively worse***. Even the records we received that are incomplete show that ***she was not getting any better*** with these treatments, with these infusions, with ***these unknown pills***."

- "Imagine, you know, trying to seek medical attention for feeling emotionally and physically drained and headaches and everything else that comes with trauma to your body and ***you just get worse.***"

59. The statements made in both the Press Release and Press Conference falsely accused Plaintiffs of engaging in unethical and unlawful medical practices, including forcibly administering unidentified substances to a patient, coercing her into ingesting unlabeled medication, and wrongfully withholding medical records.

60. Callis presented these statements as definitive factual assertions rather than as legal arguments or opinions, ensuring their widespread dissemination to the public, including potential jurors.

61. The repetition of these statements across multiple platforms demonstrates their premeditated nature and Callis's deliberate attempt to cause reputational and professional harm to Plaintiffs.

62. Callis's statements were demonstrably false and defamatory, given that, *inter alia,* they wrongfully accused Dr. Colker of having committed serious crimes.

63. Had these allegations been true, Dr. Colker would have faced immediate and severe criminal, regulatory, and professional consequences. For instance:

- If Callis's allegation that Dr. Colker injected unknown substances into [Patient]'s body were factual, Dr. Colker could be charged with ***Assault*** under Conn. Gen. Stat. § 53a-61, a Class A misdemeanor punishable by imprisonment for up to one year, fines, and mandatory professional discipline.

- If Callis's allegation that Dr. Colker forced [Patient] to accept intravenous infusions of unknown contents were factual, Dr. Colker could be charged with ***Reckless Endangerment*** under Conn. Gen. Stat. § 53a-63 and ***Cruelty to Persons*** under Conn. Gen. Stat. § 53-20, which constitute felony charges punishable by incarceration and permanent loss of medical licensure.

- If Callis's allegation that Dr. Colker obtained and disclosed [Patient]'s private medical records without authorization were factual, Dr. Colker could be charged with ***violating HIPAA*** (42 U.S.C. § 1320d-6), a federal crime punishable by fines of up to $250,000.00 per violation and imprisonment for up to ten years for wrongful disclosure or misuse of protected health information.

- If Callis's allegation that Dr. Colker coerced [Patient] into continuing treatment at Peak Wellness were factual, Dr. Colker could be charged with ***Criminal Coercion*** under Conn. Gen. Stat. § 53a-192, a Class A misdemeanor punishable by imprisonment and/or fines.

- If Callis's allegation that Dr. Colker routinely broke the doctor-patient trust and violated ethical standards were factual, Dr. Colker could be charged with ***violating the American Medical Association's Code of Medical Ethics*** and ***Connecticut State Medical Licensing Laws***, punishable by revocation or suspension of his medical license by the Connecticut Medical Examining Board pursuant to Conn. Gen. Stat. § 20-13c.

- If Callis's allegation that Dr. Colker withheld or obstructed [Patient]'s access to her complete medical records were factual, Dr. Colker could be charged with ***Concealment or Obstruction of Medical Records*** under Conn. Gen. Stat. § 20-7c and HIPAA, subjecting him to civil and criminal penalties, including federal fines, sanctions, and potential imprisonment.

64. Plaintiffs' medical records, which Callis and Holland Law had in their possession at the time of these statements, prove each of the accusations to be demonstrably false. Specifically:

- No unidentified substances were administered to Patient. Every infusion was documented, labeled, and administered with informed consent.

- Patient was never coerced into taking any medication. The medical records confirm that all supplements and medications were properly disclosed and that she actively participated in treatment decisions.

- Plaintiffs never withheld Patient's medical records. Callis and Holland Law received the full set of medical records multiple times and confirmed receipt in writing.

11

- At no point did Dr. Colker ever administer or force Patient to accept intravenous infusions of unknown contents.

65. At the time Callis made these false and defamatory statements, she was already in possession of Plaintiffs' complete medical records, having received them in multiple submissions, including on March 5, 2024, April 17, 2024, and again on August 30, 2024.

66. These records contained detailed physician notes, nursing notes, and infusion logs—material that directly contradicted the falsehoods spread by Callis.

67. Callis's decision to make and disseminate statements that she knew or should have known were false underscores the deliberate and reckless nature of her statements.

68. An attorney cannot shield herself from liability for defamation by claiming reliance on client-provided information when documentary evidence in her possession directly contradicts the statements made.

69. The inconsistencies between Callis's formal legal filings and her public statements further establish her intent to defame Plaintiffs.

70. Notably, the Opposition made no mention of the specific defamatory accusations later stated in the Press Release and Press Conference.

71. If these claims had any legal merit, Callis would have included them in her legal arguments.

72. Instead, their deliberate omission from the court filings and subsequent public amplification demonstrate that these statements were not made in good faith but were designed solely to harm Plaintiffs' reputations.

73. Callis's conduct reflects actual malice.

74. As a seasoned attorney and former judge, Callis possesses the legal training and professional responsibility to distinguish between permissible legal advocacy and reckless public defamation.

75. Callis's status and experience only heighten the gravity of her misconduct, as she knowingly disregarded the truth despite having access to records that contradicted her statements.

### *The Defamatory Statements Were Not Privileged*

76. At all relevant times, including when issuing the Press Release and conducting the Press Conference, Callis acted within the course and scope of her employment and/or agency with Holland Law, and made such statements in furtherance of the firm's representation of Patient.

77. Callis's statements were made extrajudicially, outside any formal legal proceeding, and are not protected under any litigation privilege.

78. Connecticut law recognizes that statements made to the press—even if related to ongoing litigation—are not shielded by privilege when made outside of official court filings or proceedings.

79. Callis's public statements violated professional ethical standards, specifically Connecticut Rule of Professional Conduct 3.6, which prohibits attorneys from making public statements that could materially prejudice ongoing legal proceedings.

80. Callis's intentional dissemination of inflammatory and false claims ensured that the public, including potential jurors, would be exposed to prejudicial information outside the courtroom.

81. Callis's use of the media to propagate these falsehoods, rather than confining her allegations to formal legal channels, underscores the deliberate and improper nature of her conduct.

82. Holland Law knew of Callis's conduct and failed to take timely and reasonable remedial action, in violation of Connecticut Rule of Professional Conduct 5.1(c), which holds law firm partners and lawyers with managerial authority responsible for another lawyer's misconduct when they know of the conduct at a time when its consequences can be avoided or mitigated but fail to act.

83. Callis's extrajudicial statements, which Holland Law failed to mitigate or address, served no legitimate legal purpose, and were calculated solely to damage Plaintiffs' reputations in a forum where they had no opportunity to formally respond.

*The Aftermath of Defendant's October 15, 2024, Press Release and Press Conference*

84. Since issuing her false, malicious, and defamatory statements, numerous media outlets and public figures have amplified Callis's statements, significantly exacerbating the damage to Plaintiffs' reputations.

85. On October 15, 2024, *Forbes* published an article repeating Callis's defamatory assertions, including the claim that Dr. Colker "violated ethical and medical standards" and "injected unknown substances" into a patient.

86. The article cited Callis's Press Release and framed the statements as fact, reinforcing the false narrative publicly.[1]

87. *Sports Illustrated* similarly republished Callis's statements, explicitly quoting her claims that Plaintiffs engaged in medical misconduct and failed to provide transparency about their treatments.

---

[1] https://www.forbes.com/sites/alfredkonuwa/2024/10/15/janel-grant-submits-new-filing-against-doctor-in-vince-mcmahon-lawsuit/

88. By disseminating Callis's statements to a vast audience, *Sports Illustrated* contributed to the widespread public perception that Plaintiffs engaged in criminal conduct.[2]

89. *WrestleView*, a widely followed wrestling media outlet, further circulated the statements, stating that Callis had implicated Plaintiffs in misconduct related to Patient's treatment under McMahon's direction.

90. The article falsely portrayed Plaintiffs as complicit in abuse without referencing any corroborating evidence.[3]

91. Callis's defamatory statements also gained traction across social media platforms.

92. *SEScoops*, a wrestling news account with a large following, posted a tweet repeating the statements about Plaintiffs, further solidifying the narrative that Plaintiffs engaged in unethical medical practices.[4]

93. *Fightful Wrestling*, another widely recognized outlet in the wrestling industry, tweeted that Patient's attorneys had accused Plaintiffs of withholding medical records, reinforcing Callis's knowingly false claims despite clear documentary evidence to the contrary.[5]

94. Public figures and online commentators further amplified these defamatory allegations.

---

[2] https://www.si.com/fannation/wrestling/wwe/janel-grant-submits-new-filing-in-vince-mcmahon-lawsuit

[3] https://www.wrestleview.com/top-story/330815-attorneys-for-janel-grant-submit-new-legal-filing-against-dr-carlon-colker-in-abuse-case-against-vince-mcmahon/

[4] https://x.com/sescoops/status/1846176542251991165

[5] https://x.com/Fightful/status/1888102706377560123

95. Notably, *Brandon Thurston*, a journalist covering professional wrestling, tweeted about Callis's statements, bringing additional negative attention to Plaintiffs.[6]

96. On Reddit, users discussed the statements, with one post summarizing the key points from the legal release, including claims that McMahon sent Patient to Dr. Colker, where she was allegedly medicated with unknown substances.[7]

97. These statements, widely republished across major media platforms and social media, have led to significant reputational harm for Plaintiffs.

98. The press and online discourse have depicted Plaintiffs as unethical medical practitioners, despite the lack of any legal or evidentiary basis for Callis's claims.

99. Callis's false statements have been viewed, shared, and discussed by millions of individuals worldwide, including prospective patients, professional colleagues, and potential jurors.

100. The rapid and widespread dissemination of these falsehoods has irreparably tarnished Plaintiffs' reputations in both the medical and professional communities.

101. As a direct and foreseeable consequence of Callis's extrajudicial and defamatory statements, Plaintiffs have suffered substantial harm, including reputational damage, loss of professional standing, and economic injury.

102. Callis's statements have prejudiced Plaintiffs in their professional and legal capacities, subjecting them to public scorn, distrust, and financial losses.

---

[6] https://x.com/BrandonThurston/status/1846177477384618410

[7] https://www.reddit.com/r/SquaredCircle/comments/1g47cg8/attorneys_for_janel_grant_have_filed_a_new_legal/

103. All of the above-referenced articles, posts, and statements serve as clear evidence of the severe consequences of Callis's wrongful conduct, further demonstrating the malicious nature of her statements and the extent of the harm caused to Plaintiffs.

104. All conditions precedent to the bringing of this action have occurred, been satisfied, or have otherwise been waived.

105. As a result of the Defendants' wrongful conduct, described herein, and Plaintiffs' need to protect and enforce their legal rights, Plaintiffs have retained the undersigned attorneys, and are required to pay attorneys' fees in order to prosecute this action.

## CAUSE OF ACTION

## COUNT I – DEFAMATION PER SE

106. Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 104, *supra*, as if set forth herein.

107. At all relevant times, Callis acted within the course and scope of her employment and/or agency with Holland Law and made the unprivileged statements in furtherance of the firm's representation of Patient.

108. The unprivileged statements made by Callis to others about Plaintiffs are false and defamatory.

109. At the time such statements were made by Callis, she knew or should have known that they were false and defamatory, given that, *inter alia*, the statements wrongfully accused Dr. Colker of having committed serious crimes.

110. Callis published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

111. Holland Law knew or should have known of Callis's defamatory conduct and failed to take timely and reasonable remedial action, thereby ratifying the conduct or rendering itself independently liable under applicable principles of agency and supervisory responsibility, including Connecticut Rule of Professional Conduct 5.1.

112. Numerous people actually read and/or heard the false and defamatory statements.

113. The statements were not privileged.

114. The statements were published by Callis with actual malice, oppression, and fraud in that she was aware at the time of the falsity of the publication and thus made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

115. Callis possessed information and had access to information that showed her statements were false.

116. Callis also made statements for which she had no factual basis.

117. Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them and, as such, constitute defamation *per se*.

118. As a proximate result of the maliciously false and defamatory publication of statements to third parties by Callis, Plaintiffs have been damaged.

119. Because Callis's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seeks an award for punitive damages.

**WHEREFORE**, Plaintiffs CARLON M. COLKER, M.D., and PEAK WELLNESS, INC., demand judgment against Defendants ANNE CALLIS and HOLLAND LAW FIRM LLC for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial as to all issues so triable.

Date: May 2, 2025

Respectfully submitted,

**Dennis M. Durao**
KARSTEN & TALLBERG, LLC
500 Enterprise Drive
Suite 4B
Rocky Hill, CT 06067

**Alejandro Brito**
Florida Bar No. 098442
*Pro Hac Vice Pending*
**Lara Juliette Fernandez**
Florida Bar No. 1059162
*Pro Hac Vice Pending*
BRITO, PLLC
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071

*Counsel for Plaintiffs*