**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CARLON M. COLKER, M.D., ET AL | |
| Plaintiff | |
| | CASE #: 3:25-cv-00711 |
| v. | |
| | |
| ANN CALLIS, ET AL | |
| Defendant | |
| | JULY 29, 2025 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF THE CASE ................................................................................................... 2

I.    *Janel Grant v. WWE, et al.* ............................................................................................ 2

II.   The Bill of Discovery Actions ...................................................................................... 3

III.  *Colker et al v. Callis et al.* ........................................................................................... 7

LAW AND ARGUMENT .......................................................................................................... 10

I.    Legal Standard on a Motion to Dismiss. ....................................................................... 10

II.   The Plaintiffs Have Failed to State a Claim for Defamation Because They Have Not
Plausibly Pled Actual Malice ........................................................................................ 10

      A.    Plaintiffs Are Public Figures and Required to Plead Actual Malice to State a
              Defamation Claim .............................................................................................. 11

      B.    The Medical Records Do Not Plausibly Establish That Callis Acted with Actual
              Malice .................................................................................................................

CONCLUSION ........................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................10, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................10

*Biro v. Conde Nast*,
    807 F.3d 541 (2015).............................................................................................11, 15, 18

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)..............................................................................12

*Brewer v. Memphis Pub. Co., Inc.*,
    626 F.2d 1238 (5th Cir.1980) ..........................................................................................13

*Brimelow v. New York Times Co.*,
    No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)..............................................14

*Bruno & Stillman, Inc. v. Globe Newspaper Co.*,
    633 F.2d 583 (1st Cir. 1980) ............................................................................................14

*Carson v. Allied News Company*,
    529 F.2d 206 (7th Cir.1976) .............................................................................................13

*Celle v. Filipino Reporter Enters.*,
    209 F.3d 163 (2d Cir. 2000)......................................................................................11, 14

*Clark v. Hanley*,
    89 F.4th 78 (2d Cir. 2023) ...............................................................................................10

*Collins v. Feder*,
    No. 3:23-CV-71 (KAD), 2024 WL 1658442 (D. Conn. Apr. 17, 2024) ...........................16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir.1991)...........................................................................................16, 17

*Cox v. Galazin*,
    460 F. Supp. 2d 380 (D. Conn. 2006)...............................................................................12

*Dameron v. Washington Magazine, Inc.*,
    779 F.2d 736 (D.C.Cir.1985) ...........................................................................................13

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..............................................................................................11, 12, 13

*Giunta v. Dingman*,
    893 F.3d 73 (2d Cir. 2018)...............................................................................................15

*Khalil v. Fox Corp.*,
    630 F. Supp. 3d 568 (S.D.N.Y. 2022)...............................................................................12

*Levy v. Gen. Elec. Co.*,
    No. 15CV857, 2015 WL 7722389 (D. Conn. Nov. 30, 2015)...........................................10

*Maule v. NYM Corp.*,
    429 N.E.2d 416 (N.Y. 1981).............................................................................................14

*McCollum v. Baldwin*,
    688 F. Supp. 3d 117 (S.D.N.Y. 2023)...............................................................................12

*Meeropol v. Nizer*,
    560 F.2d 1061 (2d Cir.1977).............................................................................................13

*Nelson v. Countrywide Home Loans, Inc.*,
   No. 3:18-CV-02081 (SRU), 2019 WL 4762086 (D. Conn. Sept. 30, 2019) ............................ 2

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ................................................................................................................ 11

*Prince v. Intercept*,
   634 F. Supp. 3d 114 (S.D.N.Y. 2022) .................................................................................... 12

*Schwartz v. Am. College of Emergency Physicians*,
   215 F.3d 1140 (10th Cir. 2000) .............................................................................................. 14

*Skakel v. Grace*,
   5 F. Supp. 3d 199 (D. Conn. 2014) ........................................................................................ 12

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
   181 F.3d 410 (3d Cir. 1999) ..................................................................................................... 2

*Travis v. Daily Mail*,
   78 Misc. 3d 1218(A), 185 N.Y.S.3d 655 (N.Y. Civ. Ct. 2023) .............................................. 16

*Zupnik v. Associated Press Inc.*,
   31 F. Supp. 2d 70 (D. Conn. 1998) ............................................................................... 13, 14

**Statutes**

42 U.S.C.A. § 17935(e)(1) ............................................................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 10

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Ann Callis and The Holland Law Firm (the "Defendants") move to dismiss the one-count complaint against them. The claim by Dr. Carlon Colker and Peak Wellness, Inc. (the "Plaintiffs") is purportedly one for defamation per se under Connecticut law. In reality, it is an attempt to intimidate and ultimately silence Callis related to her representation of her client Janel Grant in a lawsuit against the WWE and its founder Vince McMahon where Grant has alleged claims for sex trafficking and sexual assault, among others.[1] All of the statements forming the basis for the Plaintiffs' alleged defamation claim were made by Callis in her capacity as Grant's attorney.

This action is intertwined with other legal actions in which Defendants serve as legal counsel to Grant, where the Plaintiffs are either parties or material witnesses. The Plaintiffs' attempt to conjure a defamation claim against the Defendants is the latest in a series of tactics designed to hinder Grant from a fair adjudication of her claims.

In this action, the Plaintiffs have alleged that Callis made a series of public statements as counsel to Grant relating to those other legal actions involving the Plaintiffs which Callis "knew" to be false because the statements were "directly contradicted" by medical records that Callis had. But those medical records <u>do not</u> contradict Callis' statements; instead they are either irrelevant or otherwise verify and confirm the statements. Significantly, Plaintiffs' reference to medical records is the <u>only allegation of actual malice in the Complaint.</u> Because the Plaintiffs are public figures and therefore need to meet the heightened actual malice standard, they have

---

[1] Plaintiffs continually refer to Grant as "Patient" within the Complaint. It is not understood why Plaintiffs would do so, as they continually cite to extrinsic sources within the Complaint that plainly use Grant's full name. Within the Complaint, Plaintiffs also insert Grant's name no fewer than five times, typically in various footnotes containing links to articles or publications, or by reference to other legal actions. Any anonymity Plaintiffs attempted to provide Grant by way of the "Patient" designation is voided by these references.

not stated a proper defamation claim. As a result, the Complaint should be dismissed in its

entirety for its failure to allege any plausible basis to support the necessary allegations of actual

malice.

## STATEMENT OF THE CASE

### I.    *Janel Grant v. WWE, et al.*[2]

This matter has its roots in the case of *Janel Grant v. World Wrestling Entertainment,*

*Inc., et al.*, 3:24-cv-00090 (the "WWE Lawsuit"). In a Complaint filed in the District Court of

Connecticut on or about January 2, 2024, Grant alleges that she is a former employee of World

Wrestling Entertainment, Inc. ("WWE") and that she was a victim of abuse, sexual assault and

trafficking at WWE. The Defendants have represented Grant in the WWE Lawsuit since its

inception. In that action, Grant alleges numerous abusive acts and actions that she was

purportedly subjected to over a number of years—both by various WWE employees, including,

but not limited to, WWE founder and executive Vince McMahon, as well as various people

associated or connected with the WWE. *See Grant v. World Wrestling Entertainment, et al.*, 24-

CV-00090, Amended Complaint, Doc. No. 117 (the "WWE Complaint").

Relevant to this case, Grant alleges in the WWE Litigation that McMahon began

imposing control over her medical treatment. She claims that while enduring the alleged abuse,

she began to experience "increasingly severe physical, mental and emotional symptoms,

including sleep disruption, dizziness, exhaustion, rashes, weight loss, hair loss and migraines."

---

[2] This statement of facts and the concurrent legal arguments that follow are derived from the Complaint,
documents and other legal actions specifically referenced and relied upon within the Complaint, and
public records properly considered on a motion to dismiss. *Southern Cross Overseas Agencies, Inc. v.
Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). "At the pleading stage, courts may
take judicial notice of matters of public record such as pleadings and orders in another action." *Nelson v.
Countrywide Home Loans, Inc.*, No. 3:18-CV-02081 (SRU), 2019 WL 4762086, at *1 (D. Conn. Sept. 30,
2019) (internal citation omitted).

(*Id.* ¶ 114). She further alleges that McMahon mocked and discredited both her symptoms and her doctor at the time, ultimately "insisting" that Grant see a physician of McMahon's choosing, identified within the WWE Complaint as "Celebrity Doctor." (*Id.* ¶¶ 115-116). In this action, the Plaintiffs admit that the references to "Celebrity Doctor" and "Alternative Clinic" in the WWE Complaint refer to Dr. Colker and Peak Wellness, respectively. (*See* Compl. ¶ 37).

The allegations of the WWE Complaint address the treatment Grant received from "Celebrity Doctor." Grant alleges that she was never provided with any receipts for treatment, and Celebrity Doctor's services were paid by McMahon. (WWE Compl. ¶ 119). She alleges that when she inquired about the nature of the treatments provided, Celebrity Doctor would challenge her trust in him and suggest that they "part ways." (*Id.*). Grant also alleges that these treatments left her feeling "exhausted from Celebrity Doctor's deep dives into her personal and work life." (*Id.* ¶120). The WWE Complaint further alleges that an employee of "Alternative Clinic" participated in unwanted and degrading sexual acts perpetrated upon Grant by McMahon. (*Id.* ¶¶ 133-140).

The Plaintiffs claim that, as part of the WWE Lawsuit, they were asked to provide records related to their treatment of Grant. The Plaintiffs have attached to their Complaint, as Exhibits B and D, the record requests sent by Callis and/or the Holland Law Firm on February 5, 2024 and March 20, 2024. Each of these requests specifically asks for the production of the subject medical records **in electronic format only** pursuant to the Health Information Technology for Economic and Clinical Health Act ("HITECH Act") 42 U.S.C.A. §17935(e)(1). However, the Complaint establishes that the Plaintiffs chose to ignore this request and instead provided paper copies in response to both the February 5, 2024 and March 20, 2024 requests.

## II.     *The Bill of Discovery Actions*

Also relevant to this action are two bill of discovery actions filed in Connecticut Superior Court last year: one filed by Grant and one by the Plaintiffs.

Grant, by and through the Defendants acting as her counsel, filed a bill of discovery action on July 16, 2024. *Janel Grant v. Carlon M. Colker, et al.*, FST-CV24-6068091-S, Doc No. 100.31 ("Grant Bill of Discovery");[3] (*See also* Compl. ¶ 48). That action addressed the missing and incomplete medical records, along with other documents Grant sought. The allegations of the Grant Bill of Discovery largely track the alleged defamatory statements in this case. That Bill alleges that McMahon arranged for and directed Grant to receive treatment with Dr. Colker from November 22, 2019 through April 15, 2022. (Grant Bill of Discovery, ¶¶ 11-12.)[4] It further alleges that Dr. Colker prescribed Grant with "'adrenal trays' or 'adrenal supplement trays,' provided by his office and instructed her to take the unmarked pills daily [and] Dr. Colker did not explain the substances, dosages, or purpose of the pills to Grant beyond purportedly addressing her symptoms of fatigue." (*Id*. ¶13). Further, it alleges that Dr. Colker provided weekly IV infusions to Grant, the contents of which were not disclosed to Grant and that these treatments caused Grant to feel unwell. *Id*. ¶ 14.

The Grant Bill of Discovery claims that Defendants requested Grant's medical records from Peak Wellness in electronic format, but that Dr. Colker and Peak Wellness provided incomplete copies of records in paper format only. *Id*. ¶¶ 17-23.[5]

---

[3] The Defendants do not attach these state court filings as they are publicly accessible, but are happy to submit copies for the Court's convenience if desired.

[4] *Available at* https://efile.eservices.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?crn=4957828&DocumentNo= 27912253

[5] In this case, the Plaintiffs allege that Defendants "falsely alleged" within the Grant Bill of Discovery that Dr. Colker and Peak Wellness had failed or refused to provide Grant's electronic medical records, including associated metadata. (*Id*. ¶ 49). But the Complaint itself and the pleadings in the Grant Bill of Discovery disprove that. The Plaintiffs allege that they sent "the complete set of Patient's medical records in the format

The Grant Bill of Discovery seeks the production of records and testimony from Dr. Colker and Peak Wellness regarding not just Grant's electronic medical records, but also Peak Wellness's recordkeeping and billing procedures, payment records, payment arrangements with McMahon and/or the WWE, the purpose and substance of the treatments prescribed to Grant, communications between Dr. Colker and McMahon relating to Grant, and Dr. Colker's involvement with recommending an attorney to Grant relating to a non-disclosure agreement. (*Id*. ¶ 24). The Bill of Discovery plainly states that it seeks information "material and necessary" to ascertain whether Dr. Colker and Peak Wellness were civil conspirators in the claims against McMahon and the WWE, and whether they engaged in falsifying medical records, RICO violations, assault, battery, and breaches of a fiduciary duty, noting that Grant has potential causes of action against Dr. Colker and Peak Wellness that would be supported by the requested information.  (*Id*. ¶¶ 25-27).

As a direct response to the Grant Bill of Discovery, Colker took his first blatantly retaliatory step and filed his own—entirely frivolous—bill of discovery action against Grant on August 6, 2024. (*See Colker et al. v. Janel Grant,* FST-CV24-6068489, Doc No. 100.31 (the "Colker Bill of Discovery"). In that complaint, Colker and Peak Wellness claim that they needed discovery from Grant "concerning her alleged false accusations against Dr. Colker and Peal Wellness in order to assert claims against Grant for, among others, defamation, interference with

---

maintained in the DrChrono electronic medical records (EMR) system" to the Defendants on July 16, 2025, and that counsel confirmed receipt of the records that same day but filed the Bill of Discovery regardless. (*Id*. ¶¶ 44-45, 48). Plaintiffs attached as Exhibit A to their Complaint a series of emails which contradict the timeline of these allegations. Those emails, between Frank Silvestri (counsel for Dr. Colker and Peak Wellness) and Erica Nolan (co-counsel for Grant) show that Nolan, at 11:12 a.m. on July 16, 2024, sent "courtesy copies" of the Bill of Discovery "just filed with the Court." (Compl. Ex. A). Approximately 50 minutes later, Silvestri responds and provides what he claims are "complete electronic medical records." (*Id*.). Therefore, Plaintiffs' own Complaint establishes that electronic medical records had not, in fact, been provided by the Plaintiffs prior to the filing of the Grant Bill of Discovery.

business relations, and intentional infliction of emotional distress."(*See* Colker Bill of Discovery, p. 3). [6] The allegations of the Colker Bill of Discovery are based entirely on Grant's filing of the Grant Bill of Discovery and make no attempt to disguise that fact. (*Id.*). It does not allege any conduct outside of the legal proceedings. In fact, Colker's Bill of Discovery itself admits that Grant "may have a litigation privilege for allegations expressly made in her state and federal court pleadings" but argued that it is a "limited privilege." (*Id.* ¶12). Grant moved to strike the Colker Bill of Discovery, and without opposing, Colker voluntarily withdrew his bill of discovery on September 4, 2024, ostensibly conceding to its weakness and vexatiousness.

Notwithstanding the withdrawal of their own action, the Plaintiffs continued to oppose the Grant Bill of Discovery. On August 29, 2024, Plaintiffs filed a Motion to Dismiss the Grant Bill of Discovery. (Compl. ¶ 50). Plaintiffs allege within the Complaint that their motion to dismiss was based on an argument that the Grant Bill of Discovery was "baseless because all requested medical records had already been provided." [7] *Id*. However, their Motion to Dismiss the Grant Bill of Discovery never actually raises this argument. The Motion to Dismiss instead argues that the Grant Bill of Discovery is improper where it fails to comply with statutory rules regarding such actions. Notably, in neither the Motion to Dismiss nor the accompanying Memorandum of Law do Plaintiffs ever actually argue that the Bill of Discovery is baseless

---

[6] *Available* at
https://efile.eservices.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?crn=4968889&DocumentNo=28060974

[7] This allegation seemingly ignores that the Bill of Discovery was not limited to a request for Grant's medical records, but concerned numerous other topics and subjects, as addressed above.

because the discovery sought was already provided.  (*See* FST-CV24-6068091, Doc. No. 105.00).[8]

On October 15, 2024, Grant, through her attorneys, filed an Opposition to the Motion to Dismiss (the filing that precipitated the Press Release and Press Conference as alleged within the Complaint). (FST-CV24-6068091, Doc. No. 107.00).[9] The Opposition states that Plaintiffs had not yet provided "complete" electronic medical records, and reinforced the allegations of the Bill of Discovery insofar as the type of discovery sought, the need for its production, and that the Bill establishes probable cause for potential claims against Dr. Colker and Peak Wellness.

On May 12, 2025, Judge Colleen Zingaro denied the Plaintiffs' Motion to Dismiss the Grant Bill of Discovery. Judge Zingaro's decision rejected each ground asserted by Dr. Colker and Peak Wellness and held that Grant "has alleged matters that would be cognizable in the superior court and is not persuaded that [Grant] has sought the discovery merely to utilize in the federal court action." (FST-CV24-6068091, Doc. No. 104.04).[10]

Thus, on May 12, 2025, the Connecticut Superior Court held that Grant could proceed with the Bill of Discovery against Dr. Colker and Peak Wellness, and further issued an order that the parties were to submit scheduling orders for interrogatories, production requests, and depositions, or otherwise any objections thereto.

**III.**    ***Colker et al. v. Callis et al.***

---

[8] *Available at*
https://efile.eservices.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?crn=4957828&DocumentNo=28229598

[9] *Available at*
https://efile.eservices.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?crn=4957828&DocumentNo=28542154.

[10] *Available at*
https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=30001247

Plaintiffs filed the instant action on May 12, 2025, the same date Judge Zingaro denied their Motion to Dismiss thus allowing Grant to seek discovery from Plaintiffs. The Complaint here centers entirely upon allegedly false and defamatory statements Callis made on October 15, 2024 in a press release and press conference related to the WWE Lawsuit. (Compl. ¶ ¶ 2, 54).

The Plaintiffs identify the allegedly false and defamatory statements (collectively referred to as the "Statements") within the Complaint. First, paragraph 56 identifies the alleged defamation in the October 15, 2024 Press Release. Presumably the emphasis (supplied by Plaintiffs) highlights the allegedly defamatory portions of the excerpts:

> "Imagine being at your most vulnerable, and the doctor you are told to see only makes you feel worse. ***Our filing today*** makes clear that Dr. Colker violated ethical and medical standards when ***he injected unknown substances*** into [Patient's] body and ***directed her to take unlabeled pills*** while dismissing her basic questions about those drugs. Peak Wellness owes [Patient] answers, and the clinic's secrecy and evasion must come to an end."

(*Id.*, ¶ 56). The Plaintiffs next identify five statements allegedly made by Callis during the Press Conference which Plaintiffs contend are false and defamatory:

- "Due to the abuse she suffered, [Patient] was desperate for medical help, and she trusted licensed professionals to approach her care with the utmost seriousness. Dr. ***Colker instead violated ethical and medical standards and routinely broke the doctor-patient trust*** integral to proper treatment."
- "At Peak Wellness, Dr. Colker who runs the clinic ***also directed [Patient] to take mystery pills*** daily and ***forced her to accept intravenous infusions of unknown contents.***"
- "***Dr. Colker was on McMahon's payroll and obtained access to [Patient's] private medical records***, dictated her treatment and often ***coerced [Patient] into continuing her treatment*** at Peak Wellness."
- "We also know that she was ***getting progressively worse***. Even the records we received that are incomplete show that ***she was not getting any better*** with these treatments, with these infusions, with ***these unknown pills.***"
- "Imagine, you know, trying to seek medical attention for feeling emotionally and physically drained and headaches and everything else that comes with trauma to your body and ***you just get worse***."

(*Id.* ¶ 58).

Plaintiffs go on to allege that these Statements were knowingly and demonstrably false, and that their falsehood was conclusively proven by Grant's medical records. (*Id*. ¶ 64). Specifically, Plaintiffs allege that the medical records "prove" that:

> [N]o unidentified substances were admitted to Patient. Every infusion was documented, labeled, and administered with informed consent. Patient was never coerced into taking any medication. The medical records confirm that all supplements and medications were properly disclosed and that she actively participated in treatment decisions. Plaintiffs never withheld Patient's medical records. Callis and Holland Law received the full set of medical records multiple times and confirmed receipt in writing. At no point did Dr. Colker ever administer or force Patient to accept intravenous infusions of unknown contents.

(*Id*.).

Plaintiffs further allege that at the time Callis made the Statements in question, she was "already in possession of Plaintiffs' complete medical records, having received them in multiple submissions, including on March 5, 2024, April 17, 2024, and again on August 30, 2024[11]" and claim that the records in question contained material that "directly contradicted the falsehoods spread by Callis." (*Id*. ¶¶ 65-66). These medical records are referred to in this brief as the "Medical Records." <u>The content of the Medical Records is the only basis given by the Plaintiffs to support their contention that the Statements were knowingly false and defamatory, i.e. with "actual malice."</u>

Plaintiffs' claims and allegations against the Defendants can therefore be briefly summarized:  on or about October 15, 2024, Defendant Callis made a series of Statements that were allegedly false and defamatory. Callis allegedly knew the Statements were false and defamatory as she was in possession of Grant's medical records from Plaintiffs, which "directly

---

[11] In this allegation Plaintiffs omit their previous claim that they sent a "complete" set of electronic records to the Defendants and/or their co-counsel on July 16, 2024.

contradict" Callis's Statements. Plaintiffs conclude that Callis's making the Statements at issue, in light of the medical records, constitutes actual malice. (*Id*. ¶73).

The fatal flaw in the Plaintiffs' Complaint is that the Medical Records <u>do not</u> contradict the Statements. The Plaintiffs are public figures subject to the actual malice standard, as discussed below. Because the Medical Records do not disprove or even cast doubt on the Statements, the Plaintiffs have wholly failed to allege any plausible factual support showing actual malice—a necessary component of their defamation claim.

## LAW AND ARGUMENT

### I.    Legal Standard on a Motion to Dismiss

It is well established that the Plaintiffs have an obligation to state a plausible claim for relief. The district court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) if the Plaintiffs' factual allegations are not sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must support a claim with some factual allegations to allow the court to infer reasonably that the defendant is liable for the alleged conduct. *Levy v. Gen. Elec. Co.*, No. 15CV857, 2015 WL 7722389 at *2 (D. Conn. Nov. 30, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss under Rule 12(b)(6), the court may consider only the allegations made in the complaint, documents attached to the complaint, documents incorporated into the complaint by reference or that are nevertheless integral to the complaint, and any facts of which judicial notice may be taken. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (internal citation omitted).

### II.    The Plaintiffs Have Failed to State a Claim for Defamation Because They Have Not Plausibly Pled Actual Malice.

The Plaintiffs' burden is to plead sufficient facts that, if true, could plausibly show by clear and convincing evidence that Defendants published the Statements with actual malice. *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2015). They have not and cannot meet that burden here.

Under *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), a plaintiff who is a public figure bears this heightened burden. "[A] public figure cannot recover damages for defamatory falsehoods unless he or she proves that the statement was made with actual malice at the time of publication." *See Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 182 (2d Cir. 2000) (citations omitted). A statement is made with "actual malice" when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80. Dr. Colker, a public figure, has not met that burden here.

### a. Plaintiffs Are Public Figures and Required to Plead Actual Malice to State a Defamation Claim.

The Plaintiffs are unavoidably public figures that are required to prove the element of actual malice to state a defamation claim. The Plaintiffs' Complaint correctly takes on this burden and attempts to plead actual malice, effectively conceding that he is a public figure— surely because that fact is beyond dispute.[12] The law supports that position.

A public figure is someone who has achieved "general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). The characterization of a plaintiff as a public figure may rest on two bases: "[i]n some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public

---

[12] Within the Complaint, Plaintiffs use the term "actual malice" to describe the actions of the Defendants three separate times. Compl., ¶¶ 6, 73, 114.

figure for a limited range of issues." *Skakel v. Grace*, 5 F. Supp. 3d 199, 210 (D. Conn. 2014) (citing *Gertz*, 418 at 351). In determining whether an individual is a public figure, "the court should examine 'the nature and extent of [the] individual's participation in the particular controversy giving rise to the defamation.'" *Cox v. Galazin*, 460 F. Supp. 2d 380, 389 (D. Conn. 2006) (quoting *Gertz*, 418 U.S. at 352).

The Court may determine that Plaintiffs are public figures from the pleadings as a question of law on a motion to dismiss. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 134 (S.D.N.Y. 2022) ("Where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage.").

Here, Dr. Colker is a public figure under various theories. First, he is a voluntary and general public figure. Dr. Colker has intentionally sought to make himself a public figure and has had a significant media presence for at least the past two decades. *See Gertz*, 418 U.S. at 451.[13]

Dr. Colker has been consistently featured in the media since the early 2000's offering medical advice and information, has authored multiple books on health topics, and frequently posts videos of himself giving health advice on Facebook. Dr. Colker is also a former champion bodybuilder, powerlifter, MMA fighter and coach."[14] An excerpt from Dr. Colker's biography on the Peak Wellness website summarizes his status as a public figure:

---

[13] Courts in the Second Circuit have routinely taken judicial notice of news articles and related materials in making the determination about whether someone is a public figure at the motion to dismiss stage. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 136 (S.D.N.Y. 2022) (taking judicial notice of news articles) (citing *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 (S.D.N.Y. 2013); *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 123 (S.D.N.Y. 2023) (taking judicial notice of television news appearances and social media content); *Khalil v. Fox Corp.*, 630 F. Supp. 3d 568, 583 (S.D.N.Y. 2022) (taking judicial notice of news articles that reference the plaintiff).

[14] Peak Wellness is also a public figure by virtue of its association with Dr. Colker. Colker is the CEO and founder of Peak Wellness (*see* Peak Wellness website at https://greenwich.peakwellness.com/carlon-

A Fellow of the American College of Nutrition, Dr. Colker is a widely published clinical researcher, book author, and is regarded as one of the world's foremost experts on athletic enhancement and human performance. He is a familiar network reality TV star on ABC where he starred alongside NBA legend Shaquille O'Neal on ABC's Shaq's Big Challenge. Dr. Colker is a former Medical Correspondent for FOX, offering his expert opinion and advice to millions of American households. His commentary can also be seen on ESPN Outside the Lines, NBC's Health Segment, and Court TV. Dr. Carlon Colker has worked with numerous notable NBA, NFL, MLB, NHL, USTA, and Olympic athletes, helping them heal from injury, strengthen their bodies, and optimize their physical performance. In the world of celebrities, as he is also a former champion competitive bodybuilder, Dr. Colker is known as the "go-to" doctor for marquee entertainers needing a certain look and A-list actors facing more challenging roles involving dramatic body transformation.[15]

If the Court declines to find Dr. Colker a public figure for all purposes, he is at the very least a public figure on medical and health-related issues. The Statements that form the basis for this lawsuit all directly and solely concern Dr. Colker's practices as a doctor—the profession for which he has intentionally sought to be a public figure. In addition to voluntarily making himself a public figure, Dr. Colker is *also* an involuntary public figure by virtue of his connection to the

---

colker/; Connecticut business listing for Peak Wellness, https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=Q11xc56cYKIDhZVNW19406eB%2F2tmloZfn%2FZwY%2FIBe7s%3D). As an "involuntary public figure," Peak Wellness has been thrust into the spotlight because of its affiliation with Dr. Colker. Courts have routinely held that one who is closely associated with a public figure may also be a public figure. In fact, this court has held that *Zupnik v. Associated Press Inc.*, 31 F. Supp. 2d 70, 73 (D. Conn. 1998), the wife of a doctor accused of criminal conduct and professional negligence was a public figure because the doctor's "notoriety spilled over upon [his wife] and drew her into the public spotlight." *See also id.* at 73, (citing *Carson v. Allied News Company*, 529 F.2d 206, 210 (7th Cir.1976) (Johnny Carson's wife is a public figure)); *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 741 (D.C.Cir.1985) (Air Traffic Controller who was "an ordinary citizen ... and never acquired any notoriety apart from the crash ... [was raised] involuntarily, to the status of a limited purpose public figure"); *Meeropol v. Nizer*, 560 F.2d 1061, 1066 (2d Cir.1977) ("In the course of extensive public debate revolving about the Rosenberg Trial [their children] were cast into the limelight and became public figures under the Gertz standards"); *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1257 (5th Cir.1980) (husband of woman who once dated Elvis Presley was also public figure). Therefore, both Plaintiffs are public figures subject to the actual malice standard.

[15] https://greenwich.peakwellness.com/carlon-colker/

WWE Lawsuit, which has generated significant media attention.[16] *See Zupnik v. Associated Press Inc.*, 31 F. Supp. 2d 70, 72 (D. Conn. 1998) (doctor who engendered intense media and public interest as a result of the numerous allegations of criminal conduct and professional negligence was a public figure); *Schwartz v. Am. College of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000) (doctor voluntarily injected himself into public controversy by writing editorials on issue relating to his practice). Dr. Colker is a public figure for all purposes, or at the very least on medical issues, both voluntarily and involuntarily.

The primary rationale of the public versus private figure question is whether the individual has access to "chAnnls of communication" to rebut the defamatory accusations—access to these chAnnls supports the determination that a party is a public figure. *Celle*, 209 F.3d at 177 (quoting *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 589 (1st Cir. 1980)). Dr. Colker clearly has access to chAnnls of communication, as evidenced by his prolific media history and presence. He is undeniably a public figure. *See, e.g.*, *Maule v. NYM Corp.*, 429 N.E.2d 416, 417-18 (N.Y. 1981) (holding national sports writer to be a public figure); *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969 at *2 (2d Cir. Oct. 21, 2021) (plaintiff is public figure where he has "long and distinguished career as a writer and journalist," wrote bestselling book and is "widely known in his capacity as both the creator and editor" of popular website).

---

[16] *See, e.g.*, *Janel Grant Files Petition for Records in Vince McMahon Lawsuit*, Yahoo! News (July 25, 2024, 1:18 PM), https://www.yahoo.com/news/janel-grant-files-petition-records-171846145.html; Brent Schrotenboer, *New Filing in Vince McMahon Lawsuit Details Allegations of Sexual Assault*, USA Today (Oct. 15, 2024), https://www.usatoday.com/story/sports/2024/10/15/new-filing-vince-mcmahon-lawsuit-sexual-assault-allegations/75681093007; Staff Report, *Janel Grant Files New WWE Lawsuit Documents Against Vince McMahon and Dr. Colker*, CT Insider (July 24, 2024), https://www.ctinsider.com/news/article/janel-grant-vince-mcmahon-wwe-lawsuit-dr-colker-19578073.php.

From the pleadings, including their own admission in attempting to plead actual malice, the Plaintiffs are public figures.

**b.  <u>The Medical Records Do Not Plausibly Establish That Callis Acted with Actual Malice.</u>**

The sole allegation that the Plaintiffs rely on to support actual malice is that Callis was allegedly in possession of the "complete" Medical Records (Compl. ¶26), which "prove each of the [alleged defamatory Statements] demonstrably false." (Compl. ¶64). But those medical records absolutely <u>do not</u> contradict the Statements. There is absolutely nothing in the Medical Records, which the Court <u>can consider</u> on this Motion to Dismiss, that would establish that Callis knew the Statements were false or acted with "reckless disregard" for the truth.

To plausibly plead actual malice and survive a motion to dismiss, the Court must find that the Plaintiffs have alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (internal quotation marks and citation omitted). The Plaintiffs have not met that burden here.

Even without reviewing or considering the Medical Records, the Court can conclude the Plaintiffs have not plausibly pled actual malice. The plausibility standard requires the Plaintiffs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Stating that Callis was in possession of the Medical Records does not create that reasonable inference. Logically, medical records do not typically or routinely contain the types of information that would disprove Callis' Statements. For example, a medical record would not typically include statements about whether pills were labeled, whether the patient was told the specific contents of an IV drip, or whether a doctor "violated ethical and medical standards." (Compl. ¶¶56, 58). Likewise, medical records would not contain statements

about whether or not a doctor was on Vince McMahon's payroll or whether he "coerced" a patient into continuing treatment. (*Id.*). Plaintiffs' citation to the medical records in support of actual malice is merely a red herring to lead the Court to believe evidence exists that does not. And in fact, the Plaintiffs only make a general blanket reference to the Medical Records; they do not cite to any specific portion of the Medical Records or specific record that allegedly disproves the Statements. The mere fact that they have pled the existence of a document in support of actual malice does not meet the pleading standard. *Travis v. Daily Mail*, 78 Misc. 3d 1218(A), 185 N.Y.S.3d 655 (N.Y. Civ. Ct. 2023) (plaintiff's exhibits of documents allegedly supporting knowledge of falsity of statements did not sufficiently plead actual malice). Therefore, from the pleadings alone, the Plaintiffs have not plausibly pled actual malice and the Court should dismiss the Complaint.

In addition, from a review of the Medical Records themselves, it is clear they <u>do not</u> prove the Statements were made with actual malice. As an initial matter, although not attached to the Complaint, the Medical Records are referenced numerous times within the Complaint and are thus integral to the Complaint. The Court may therefore consider them on this motion to dismiss.[17] "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991). The Court may take into consideration a document that is "integral to the complaint" in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. *Id.* at 47–48; *see, e.g.*, *Collins v. Feder*, No. 3:23-CV-71 (KAD), 2024 WL 1658442, at *4 (D. Conn. Apr. 17, 2024) ("The medical records, which the Court has determined were relied upon in crafting the Second

---

[17] Given their private nature, the Medical Records are filed under seal.

Amended Complaint and can be considered in assessing this motion to dismiss. . .”). Here, the Medical Records are clearly "integral to the complaint." *Cortec Indus.*, 949 F.2d at 47. They are the sole basis for the Plaintiffs' actual malice allegations, which is an essential element of a defamation claim—the sole claim in this action.





The Medical Records are the <u>only</u> factual allegations of any kind pled in support of actual malice. The Plaintiffs have not alleged that any other document, source, or fact of any kind will establish actual malice. Therefore, because the Medical Records do not establish actual malice, there can be no argument that "discovery will reveal evidence of actual malice." *See Biro*, 807 F.3d at 546.[18]

---

[18] The Plaintiffs also argue that the Statements were demonstrably false because if they were true, Dr. Colker would have been charged with a crime. (Compl. ¶63). But of course, there are serious flaws with that argument and it cannot be considered as support for actual malice. The Statements never specifically referenced criminal conduct, nor did they contain enough information to determine whether the conduct complained of constitutes a crime. But more significantly, the fact that Dr. Colker *could have been charged with a crime* but *has not been* simply cannot be evidence that he has not committed one. It assumes that everyone who has committed any kind of crime has faced consequences for that crime, which is so wildly untrue as to not require further explanation.

The only allegation the Plaintiffs made in support of actual malice is that Callis allegedly had the Medical Records – which clearly <u>do</u> not and <u>would</u> not disprove any of her Statements. None of the Plaintiffs' allegations plausibly establish that the Defendants acted with actual malice. As the only count pled in the Complaint is defamation, and the Plaintiffs have not met their burden on an essential element, the Complaint should be dismissed.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, the Defendants respectfully ask this Court to dismiss the Complaint.

Respectfully submitted,
ANN CALLIS
HOLLAND LAW FIRM LLC

By:  <u>*/s/ Timothy Gondek / Juris #ct29190*</u>
Timothy Gondek
Hannah Meyers
LEWIS BRISBOIS BISGAARD & SMITH, LLP
185 Asylum Street, Suite 2603
Hartford, Connecticut 06103
Timothy.Gondek@LewisBrisbois.com
Hannah.Meyers@LewisBrisbois.com
hartfordeservice@lewisbrisbois.com
Tel: (860) 748-4806
Fax: (860) 748-4857

William S. Fish, Jr.
Alexa T. Millinger
HINCKLEY ALLEN & SNYDER LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
wfish@hinckleyallen.com
amillinger@hinckleyallen.com
Tel: (860) 725-6200
Fax: (860) 278-3802

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on July 29, 2025, a copy of the foregoing was filed electronically on the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record for viewing via the Court's ECF system.

*/s/ Timothy Gondek*
Timothy Gondek
