UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------  x
CARLON COLKER and PEAK WELLNESS, INC.,        :
                                              :
                  Plaintiffs,                 :
                                              :
          v.                                  :        25-CV-711 (SFR)
                                              :
ANN CALLIS and HOLLAND LAW FIRM LLC,          :
                                              :
                  Defendants.                 :
------------------------------------------------------------  x
```

**MEMORANDUM & ORDER**

This is a defamation action brought by Plaintiffs Carlon Colker, a physician, and Peak Wellness, Inc., the Greenwich-based medical practice founded by Colker. Non-party Janel Grant received care from Colker at Peak Wellness from 2019 to 2022. In 2024, Grant filed a bill of discovery in Connecticut Superior Court, alleging that Colker and Peak Wellness improperly declined to produce her complete medical records. In conjunction with responding to a motion to dismiss filed by Colker and Peak Wellness in that state-court action, Grant's attorneys—Defendants Ann Callis[1] and Holland Law Firm—issued a press release and held a press conference. Plaintiffs assert that Defendants are liable for defamation *per se* for certain statements made in the press release and at the press conference.

The present Opinion resolves Defendants' Motion to Dismiss, ECF No. 36. As explained below, the Motion is denied.

---

[1] The Complaint spells Callis's first name as "Anne." Defendants' briefing spells Callis's first name as "Ann," which also matches the spelling of Callis's first name in her Notice of Appearance in *Grant v. World Wrestling Entertainment et al*, No. 3:24-cv-90 (D. Conn.).

I.    **BACKGROUND**

A.    **Factual Background**

I draw the following facts from the Complaint and other matters of which I may take judicial notice.[2]

Colker is a practicing physician who is the founder and operator of Peak Wellness. Compl. ¶ 17, ECF No. 1. Peak Wellness "provides comprehensive medical care, including wellness programs and traditional and integrative treatments." *Id.* ¶ 18.

On November 22, 2019, Colker began to provide medical care at Peak Wellness to Janel Grant, whom the Complaint identifies as "Patient." Compl. ¶ 21.[3] Grant received medical care at Peak Wellness at least 60 times from November 2019 to April 2022. *Id.* ¶ 22. According to the Complaint, Grant "actively participated in her treatment decisions and was consistently provided with comprehensive explanations of each treatment." *Id.* ¶ 23. Grant's "care was tailored to her specific medical issues, health goals, and supported by ongoing detailed assessments." *Id.* ¶ 24. Grant concluded treatment at Peak Wellness on April 15, 2022. *Id.* ¶ 29. Grant gave no "indication of dissatisfaction or concern regarding the care she received. *Id.* ¶ 29.

On January 25, 2024, Janel Grant initiated a civil lawsuit in this Court against Vincent McMahon and World Wrestling Entertainment. Compl. ¶ 34; *see also Grant v. World*

---

[2] I cite throughout to the pagination set by ECF rather than any internal page numbers included in the parties' briefs or exhibits.

[3] Defendants observe that the Complaint's reference to "Patient" does little to preserve Grant's anonymity because the Complaint simultaneously refers to both civil actions in Connecticut courts that Grant has brought in her own name. Defs.' Mem. 5 n.1. For clarity's sake, I refer to Grant by her given name in this Opinion.

*Wrestling Entertainment*, 3:24-cv-90 (D. Conn.) ("*Grant v. WWE*"). Callis and Holland Law represent Grant in *Grant v. WWE*. *Id.* Neither Colker nor Peak Wellness is a party to that action, but the Complaint filed January 25, 2024, referred to visits with "Celebrity Doctor" at "Alternative Clinic." *Id.*, ECF No. 1, ¶ 116. The First Amended Complaint filed May 7, 2025 removed these pseudonyms in favor of referring directly to Grant's visits with Colker at Peak Wellness. *Id.*, ECF No. 117, ¶ 123.

In February 2024, Callis and Holland Law requested that Peak Wellness produce Grant's medical records. Compl. ¶ 38. Callis and Holland Law subsequently requested additional records. *Id.* ¶ 41. On July 16, 2024, Grant brought a pre-suit discovery action ("Grant Bill of Discovery") against Colker and Peak Wellness in Connecticut Superior Court. *Id.* ¶ 46; *Grant v. Colker,* FST-CV24-6068091-S. Grant was represented by Callis and Holland Law in this action. *Id.* In the Grant Bill of Discovery, Grant contended that, "[t]o date, despite repeated requests, Dr. Colker and Peak Wellness have failed or refused to provide [Grant's] electronic medical records, including any associated metadata." Compl. ¶ 50. The Complaint alleges that on this same date—July 16, 2024—Peak Wellness produced a complete set of Grant's medical records "in the format maintained" by Peak Wellness' records system. *Id.* ¶ 44.[4]

---

[4] The Complaint asserts that the full set of records were provided to Grant's attorneys on July 16, 2024, the same day that the Grant Bill of Discovery action was filed. Compl. ¶¶ 48-49. The emails attached as exhibits to the Complaint appear to show that Colker and Peak Wellness's attorney transmitted the electronic medical records to Grant's attorneys on July 16, 2024 only after Grant's attorneys alerted Colker and Peak Wellness's attorney of the Grant Bill of Discovery. ECF No. 1-2, at 2-3.

Colker and Peak Wellness moved to dismiss the Grant Bill of Discovery on August 29, 2024. *Id.* ¶ 50. And on August 30, 2024, Peak Wellness produced Grant's medical records in the format requested by Callis and Holland Law. *Id.* ¶ 51. Grant (through Callis and Holland Law) responded in opposition to the motion to dismiss the Grant Bill of Discovery action on October 15, 2024. *Id.* ¶ 52.

On October 15, 2024—the same day they filed their opposition to the motion to dismiss the Grant Bill of Discovery—Callis issued a press release. *Id.* ¶ 54. The press release stated:

> Imagine being at your most vulnerable, and the doctor you are told to see only makes you feel worse. Our filing today makes clear that Dr. Colker violated ethical and medical standards when he injected unknown substances into [Patient's] body and directed her to take unlabeled pills while dismissing her basic questions about those drugs. Peak Wellness owes [Patient] answers, and the clinic's secrecy and evasion must come to an end.

*Id.* ¶ 56 (emphasis omitted).

Callis later broadcast a press conference on YouTube. *Id.* ¶ 57. In that press conference, Callis stated as follows:

> Imagine being at your most vulnerable, and the doctor you are told to see only makes you feel worse. Our filing today makes clear that Dr. Colker violated ethical and medical standards when he injected unknown substances into [Patient's] body and directed her to take unlabeled pills while dismissing her basic questions about those drugs. Peak Wellness owes [Patient] answers, and the clinic's secrecy and evasion must come to an end.
>
> At Peak Wellness, Dr. Colker who runs the clinic also directed [Patient] to take mystery pills daily and forced her to accept intravenous infusions of unknown contents.
>
> Dr. Colker was on McMahon's payroll and obtained access to [Patient's] private medical records, dictated her treatment, and often coerced [Patient] into continuing her treatment at Peak Wellness.
>
> We also know that [Patient] was getting progressively worse. Even the records we received that are incomplete show that she was not getting any better with these treatments, with these infusions, with these unknown pills.

Imagine, you know, trying to seek medical attention for feeling emotionally and physically drained and headaches and everything else that comes with trauma to your body and you just get worse.

*Id.* ¶ 58 (emphasis omitted). The Complaint contends that each of these statements falsely accused Colker and Peak Wellness "of engaging in unethical and unlawful medical practices." *Id.* ¶ 59. Moreover, the Complaint alleges that Grant's medical records "prove each of the accusations to be demonstrably false." *Id.* ¶ 64.

On May 12, 2025, the Connecticut Superior Court (the Honorable Colleen Zingaro) denied Colker and Peak Wellness's motion to dismiss the Grant Bill of Discovery. *Grant v. Colker*, No. FST-CV24-6068091-S, 2025 WL 1443460 (Conn. Super. Ct. May 12, 2025).

## B.    Procedural History

Plaintiffs initiated this action by filing a Complaint on May 2, 2025. Compl., ECF No. 1.[5] Defendants filed a Motion to Dismiss on July 29, 2025. Defs.' Mot. to Dismiss, ECF No. 36. Defendants supported the Motion with a memorandum redacting certain mentions of Grant's medical records. Defs.' Mem. of L. in Supp. of their Mot. to Dismiss the Compl. ("Defs.' Mem."), ECF No. 37. Defendants also moved to seal (1) an unredacted version of their brief and (2) an exhibit containing Grant's medical records from Peak Wellness. Mot. to Seal, ECF No. 35; Defs.' Unred. Mot. to Dismiss & Exs., ECF No. 38-1. Plaintiffs did not oppose Defendants' request to seal Grant's medical records and their brief's references to the records.

---

[5] Defendants' briefing states this action commenced on May 12, 2025, *i.e.* the same date that the Superior Court denied Plaintiffs' motion to dismiss the Grant Bill of Discovery. Defs.' Mem. 12. It appears, however, that the present action predates the Superior Court's decision by ten days.

Plaintiffs responded in opposition on August 19, 2025. Pls.' Mem. of L. in Opp. to Defs.' Mot. to Dismiss, ECF No. 44. After observing that Plaintiffs' brief filed on the public docket excerpted from Grant's medical records and included her date of birth, I sealed Plaintiffs' opposition brief and directed Plaintiffs to file a redacted version of their brief. ECF No. 45.[6] Plaintiffs filed their redacted brief on August 20, 2025. Pls.' Mem. of L. in Opp. to Defs.' Mot. to Dismiss ("Pls.' Mem."), ECF No. 47. Defendants replied on September 2, 2025. Defs.' Reply to Pls.' Opp. to Mot. to Dismiss ("Defs.' Reply"), ECF No. 50.

Over Plaintiffs' opposition, I stayed discovery during the pendency of the motion to dismiss. ECF No. 59. On March 13, 2026, in conjunction with issuing this Opinion, I granted Defendants' Motions to Seal and instructed Plaintiffs to provide additional information about the citizenship of Holland Law. ECF Nos. 60 & 61.

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than

---

[6] My order stated as follows:

> Plaintiff's response to the Motion to Dismiss, ECF No. 44, contains a non-party's birth date in violation of Fed. R. Civ. P. 5.2(a) and non-party medical records that are the subject of an unopposed Motion to Seal. *See* ECF No. 35. Given these circumstances, the court finds clear and compelling reasons to seal the Plaintiff's response pending the filing of a redacted response on the public docket that redacts the non-party's birth date in accordance with Fed. R. Civ. P. 5.2(a) and the medical records that are the subject of the unopposed Motion to Seal. The Clerk of Court is respectfully directed to **SEAL** ECF No. 44. Plaintiff's redacted response is due on or before August 25, 2025.

ECF No. 45.

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.    **DISCUSSION**

The Complaint asserts a single claim of defamation per se. Compl. ¶¶ 106-19. "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009) (citation and internal quotation marks omitted).

As the Connecticut Appellate Court has explained, the fourth prong—reputational injury—is presumed to be satisfied where "the defamatory meaning of the speech is apparent on the face of the statement." *Silano v. Cooney*, 189 Conn. App. 235, 242 (2019). Connecticut courts recognize "two classes of defamation per se: (1) statements that accuse a party of a crime involving moral turpitude or to which an infamous penalty is attached, and (2) statements that accuse a party of improper conduct or lack of skill or integrity in his or her profession or business and the statement is calculated to cause injury to that party in such profession or business." *Stevens v. Khalily*, 220 Conn. App. 634, 646-47 (2023).

Where the plaintiff is a public figure, however, "the plaintiff has the added burden of proving that the allegedly defamatory statement was published with 'actual malice,' that is with knowledge that the statement was 'false or with reckless disregard of whether it was false or not.'" *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). It is the defendant's burden to demonstrate that the plaintiff is a public figure. *See Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136 (2d Cir. 1984); *Coleman v. Grand*, 523 F. Supp. 3d 244, 255 (E.D.N.Y. 2021) ("[P]ublic figure status is a question of law for the Court that places the burden of proof on the defendant."), *aff'd*, 158 F.4th 132 (2d Cir. 2025).

Defendants do not dispute that the Complaint adequately pleads the elements of a claim of defamation per se. *See* Defs.' Mem. Instead, they argue for dismissal because they say that Plaintiffs are public figures. Defs.' Mem. 15-19. Assuming the Plaintiffs can be characterized as public figures or at least limited-purpose public figures, Defendants say the Complaint should be dismissed because it fails to support the inference that Defendants acted with actual malice in describing how Colker cared for Grant. *Id.* at 19-23.

## A.    Procedural Objection

Defendants urge me to conclude from the Complaint and other matters of which I may take judicial notice that Plaintiffs are public figures. Defs.' Reply 2-4. Plaintiffs object that this factually sensitive inquiry is not properly resolved on a motion to dismiss. Pls.' Mem. 6-8.

"Often [the public figure] inquiry is undertaken by a court only once parties have completed discovery." *Elliott v. Donegan*, 469 F. Supp. 3d 40, 48 (E.D.N.Y. 2020). Nonetheless, "[w]here the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion

to dismiss stage." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807

F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015). "Courts in this Circuit

have employed judicial notice in making determinations about whether plaintiffs are public

figures at the motion to dismiss stage." *Id.* at 271 n.9 (collecting cases). For example, courts

determining whether a plaintiff is a public figure often "take judicial notice of the existence of

articles written by and about [a plaintiff], though not for the truth of the matter asserted in the

documents themselves." *Prince v. Intercept*, 634 F. Supp. 3d 114, 136 n.23 (S.D.N.Y. 2022)

(quoting *Biro*, 963 F. Supp. 2d at 271 n.9).

Defendants argue that I should take judicial notice of Colker's professional biography

on Peak Wellness's website, as well as several books and articles authored by Colker, which

they have attached as exhibits to an attorney affidavit submitted alongside their reply brief.

Defs.' Reply 2-4; *id.* at 13. I take notice that Colker has published numerous statements

regarding his medical practice and on alternative treatments, not for the truth of the statements

asserted in those writings, but rather for their existence. *See, e.g.*, *Elliott*, 469 F. Supp. 3d at

45 n.2; *Brimelow v. New York Times Co.*, No. 20 CIV. 222 (KPF), 2020 WL 7405261, at *1

n.1 (S.D.N.Y. Dec. 16, 2020) (taking judicial notice of plaintiff's published writings at motion-

to-dismiss stage), *aff'd*, No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021).

## B.    Plaintiffs Are Not Public Figures

Because of the "profound national commitment to the principle that debate on public

issues should be uninhibited, robust, and wide-open," *New York Times*, 376 U.S. at 270, the

Supreme Court has long recognized that "the First Amendment places limitations on the States'

power to enforce their libel laws," *Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 66 (1976).

For this reason, "the elements of a libel action are heavily influenced by the minimum

standards required by the First Amendment." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). As relevant here, "[w]hether a party is a public figure is a matter of constitutional law for the court to decide." *Cummins v. Suntrust Cap. Markets, Inc.*, 649 F. Supp. 2d 224, 240 (S.D.N.Y. 2009), *aff'd*, 416 F. App'x 101 (2d Cir. 2011).[7]

"The characterization of a plaintiff as a public figure may rest on two bases: '[i]n some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Skakel v. Grace*, 5 F. Supp. 3d 199, 210 (D. Conn. 2014) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (U.S. 1974)).[8]

Defendants say that Colker is properly categorized as an all-purpose public figure, or, at the least, a limited-purpose public figure. Defs.' Mem. 15-19. Defendants' briefing focuses largely on Colker, arguing in a footnote that "Peak Wellness is also a public figure by virtue of its association with Dr. Colker." Defs.' Mem. 16 n.14. I therefore focus on whether Defendants have met their burden of demonstrating that Colker is a public figure.

---

[7] "[S]tates are entitled to provide a broader, though no more constricted, meaning to public figures" than federal law provides. *Cummins*, 649 F. Supp. 2d at 240 (quoting *Harris v. Quadracci*, 48 F.3d 247, 250 n. 5 (7th Cir.1995)). The parties have not suggested, and my research has not shown, that Connecticut has adopted a broader protection than that otherwise available to public figures under the First Amendment. *See Gleason v. Smolinski*, 319 Conn. 394, 440-41 (2015). I therefore analyze, as a matter of federal constitutional law, whether Plaintiffs are public figures.

[8] Although the *New York Times* standard was grounded in the First Amendment's protection for media, this same standard applies where, as here, the defendants accused of defamation are not members of the media. *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000).

### 1.    All-Purpose Public Figure

"Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz*, 418 U.S. at 352. In *Gertz,* the Supreme Court rejected the proposition that the petitioner—a prominent attorney, published author, and civic leader—was an all-purpose public figure, and bolstered this conclusion by observing that "[n]one of the prospective jurors called at the trial had ever heard of petitioner prior to this litigation." *Id.* The Second Circuit has observed that only a "rare person" will satisfy the showing required to be considered an all purpose public figure. *Lerman*, 745 F.2d at 137.

Defendants rely upon Colker's professional biography, which describes Colker as a "familiar network reality TV star," a "widely published clinical researcher," and "one of the world's foremost experts on athletic enhancement and human performance." Defs.' Mem. 17. Plaintiffs respond that, although "Dr. Colker may be well-known in some circles, this, in and of itself, does not make him a general public figure *for all purposes*." Pls.' Mem. 10 (emphasis in original).

I agree with Plaintiffs that the current record does not provide "clear evidence" that Colker has "achieved [] general fame or notoriety in the community." *Gertz*, 418 U.S. at 351-52. Although Colker's professional biography states that he associates with celebrities and his published works demonstrate he has cultivated public attention to his views on alternative medicine, he is not such a household name that I am convinced he should be considered a public figure for all purposes. *See, e.g.*, *Lerman*, 745 F.2d at 137 (holding that author who had "achieved international renown" was not the "rare person" who qualified as an "all purpose public figure"); *Coleman*, 523 F. Supp. 3d at 255- (rejecting proposition that acclaimed jazz

11

musician was an all purposes public figure because he was not a "household name"); *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 22 F. Supp. 3d 240, 250 (S.D.N.Y. 2014) ("Courts have held that even well-known corporations that sell and advertise common products are not general purpose public figures.").

### 2.    Limited-Purpose Public Figure

Defendants also argue Colker is a limited-purpose public figure. Defs.' Mem. 17-18. The Second Circuit has instructed that in order to establish that a plaintiff is a limited-purpose public figure, a "defendant must show the plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Lerman*, 745 F.2d at 136-37; *United States v. Sergentakis*, 787 F. App'x 51, 53 (2d Cir. 2019) (applying *Lerman* test to determine whether an individual is a limited-purpose public figure).

Although *Lerman* remains the "leading Second Circuit case on this issue," *Elliott*, 469 F. Supp. 3d at 49, the parties' briefing does not cite to *Lerman* or analyze its factors. *See* Defs.' Mem. 16-18; *see also* Pls.' Mem. 9-10. Nonetheless, the parties appear to agree that factors (1) and (4) are satisfied here because Colker has marketed himself as a medical expert and he regularly engages with the media on health-related issues. Instead, the core of the dispute is whether Defendants' statements implicated a public controversy and whether Colker voluntarily participated and assumed a leading role in that debate. *See Lerman*, 745 F. 2d at 136-37.

"The Second Circuit has defined a public controversy as 'any topic upon which sizeable segments of society have different, strongly held views,' even if the topic does 'not involve political debate or criticism of public officials.'" *Elliott*, 469 F. Supp. 3d at 49 (quoting *Lerman*, 745 F.2d at 138). "A controversy is a specific question or real issue being discussed at the time of the defamatory statement." *Id.* at 50. "To determine whether there is a public controversy, the court 'must examine whether persons actually were discussing some specific question,' looking to 'see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.'" *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016) (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980).[9]

It may well be that Colker participated in a public controversy regarding alternative wellness treatments. *See* Defs.' Reply 3 (describing Colker as an influencer of "matters related to health optimization and alternative health treatments"). Even assuming *arguendo* such a controversy exists, Plaintiffs are limited-purpose public figures "only to the extent [Defendants' statements] are relevant to the public figure's involvement in a given controversy." *Biro*, 963 F. Supp. 2d at 270; *see also Gertz*, 418 U.S. at 352 (instructing courts to analyze "the nature and extent of [the] individual's participation in the particular controversy *giving rise to the defamation*") (emphasis added). Here, however, Defendants' statements did not arise from the debate surrounding alternative medicine. Instead, Defendants stated that

---

[9] Although the D.C. Circuit's definition of "public controversy" in *Waldbaum* is of course not binding on me, the *Waldbaum* formulation has been cited approvingly by district courts in the Second Circuit. *See, e.g.*, *Holder*, 797 F. Supp. 3d at 147; *Prince*, 634 F. Supp. 3d at 135; *Elliott*, 469 F. Supp. 3d at 49; *Biro*, 963 F. Supp. 2d at 271.

13

Colker "violated ethical and medical standards and routinely broke the doctor-patient trust."

Compl. ¶ 58.

Even construed liberally, Defendants' statements about "mystery pills" and "intravenous infusions of unknown contents" did not purport to engage in the debate surrounding alternative medicine; rather, they questioned a far narrower (and private) concern: Colker's record of treating Janel Grant from 2019-2022. Thus, Colker's participation in the debate surrounding alternative medicine does not provide a basis to conclude he is a limited-purpose public figure for *these* allegedly defamatory statements. *See, e.g.*, *Sargentakis*, 787 F. App'x at 53 (stating that, even assuming individual were considered a public figure for one purpose, "the statements . . . do not relate to the victim in his capacity as the leader of a charitable organization; they relate to the victim in his capacity as a private person"); *Elliott*, 469 F. Supp. 3d at 53; *van der Stelt v. Georgetown Univ.*, 774 F. Supp. 3d 90, 123 (D.D.C. 2025) (declining to treat professor as limited-purpose public figure because, although pleadings depicted professor's "stature in his dedicated field of study, it does not make him a limited-purpose public figure for the purposes of the relevant public controversy").

I therefore decline to conclude from the present record that Colker and Peak Wellness are limited-purpose public figures.[10]

---

[10] I am similarly unconvinced by Defendants' cursory assertion that Colker is a limited-purpose public figure because of his media commentary on "medical and health-related issues." Defs.' Mem. 17. First, Defendants have not analyzed how their comments actually implicated Colker's commentary on these issues. Second, courts routinely define the relevant public controversy with a far greater degree of particularity. *See, e.g.*, *Elliott*, 469 F. Supp. 2d at 53 ("sexual assault, sexual harassment, and consent in the workplace"); *Holder v. Bobb*, 797 F. Supp. 3d 134, 148 (E.D.N.Y. 2025) ("Guyanese politics and related affairs"); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 178 (S.D.N.Y. 2024) (accusations of corruption against former President of the United States); *Prince v. Intercept*, 634 F. Supp. 3d 114, 137 (S.D.N.Y. 2022) ("public debate over the use of private military contractors or paramilitary services by countries other than the United States in foreign

### 3.   Involuntary Public Figure

In the alternative, Defendants argue that Colker should be understood as an *involuntary* limited-purpose public figure because (1) *Grant v. WWE* has attracted significant interest and (2) the Amended Complaint filed in *Grant v. WWE* names Colker and Peak Wellness as enablers of the abuse that Grant says she experienced. Defs.' Mem. 17-18.[11]

The Supreme Court has posited that "it may be possible for someone to become a public figure through no purposeful action of his own," but cautioned that "the instances of truly involuntary public figures must be exceedingly rare." *Gertz*, 418 U.S. at 345. Indeed, one leading treatise has observed that the Court has since "emphasized the voluntary nature of the public-figure status" and never returned to its hypothetical regarding involuntary figures. *Sack on Defamation: Libel, Slander and Related Problems*, 5-58 (5th ed. 2017).

Lower courts have applied the involuntary public figure label sparingly. For example, in *Dameron v. Washington Magazine, Inc.*, the D.C. Circuit concluded that the sole air traffic controller on duty at the time of a commercial airline crash was an involuntary public figure, observing that "[b]y sheer bad luck" and "through no desire of his own," he "became embroiled . . . in the ensuing controversy over the causes of the accident." 779 F.2d 736, 742 (D.C. Cir.

---

conflicts"); *Lerman*, 745 F.2d at 137 ("sex and nudity in films"). In sum, Defendants have not met their burden of establishing that their comments were relevant to a "specific question" in which Colker undertook a leading role. *Elliott*, 469 F. Supp. 3d at 50.

[11] Defendants do not (and indeed cannot) argue that Colker voluntarily participated in the controversy related to *Grant v. WWE*. *See Time, Inc. v. Firestone*, 424 U.S. 448, 457 (1976) (rejecting proposition that one becomes a limited purpose public figure "simply by virtue of their being drawn into a courtroom"); *La Liberte v. Reid*, 966 F.3d 79, 92 (2d Cir. 2020) ("People become limited purpose public figures only when they voluntarily invite comment and criticism by injecting themselves into public controversies.") (citation and internal quotation marks omitted).

1985). The Second Circuit has cited approvingly to a California Supreme Court decision that

posited that involuntary public official status should be applied only to an "individual who,

despite never having voluntarily engaged the public's attention in an attempt to influence the

outcome of a public controversy, nonetheless has acquired such public prominence in relation

to the controversy as to permit media access sufficient to effectively counter media-published

defamatory statements." *La Liberte*, 966 F.3d at 92 n.10 (quoting *Khawar v. Globe Int'l, Inc.*,

19 Cal. 4th 254, 265 (1998)). *See also van der Stelt*, 774 F. Supp. 3d at 123 (concluding that

controversy surrounding plaintiff, although attracting coverage from several media outlets—

did not approach the requisite level to categorize the plaintiff as an involuntary public figure).

      Here, I cannot say that *Grant v. WWE* has garnered so much media attention that Colker

should be classified as an involuntary public figure. Nor would Colker's limited involvement

in that action support a finding that he "has acquired such public prominence" to justify treating

him as an involuntary public figure. *La Liberte*, 966 F.3d at 92 n.10.[12] For these same reasons,

---

[12] *Zupnik v. Associated Press Inc.*, 31 F. Supp. 2d 70 (D. Conn. 1998), cited in Defendants' briefing, does not require a different result. In *Zupnik*, the court analyzed whether the spouse of a doctor imprisoned for insurance fraud could be understood to be an involuntary public figure. *Id.* at 72-73. The court granted summary judgment to the defendant, reasoning that the "intense public interest surrounding [plaintiff's spouse's] investigation, conviction and imprisonment, as well as the plaintiff's alleged involvement in fraudulent transfers of property, transformed the plaintiff into an involuntary public figure." *Id.* at 73 (emphasis added). Although the *Zupnik* court described the plaintiff as an involuntary public figure, it also described the numerous voluntary acts by which the plaintiff associated with an ongoing public controversy. *Id.* at 73 (describing plaintiff's alleged participation in "fraudulent conveyance of property for the purpose of hiding assets from potential judgment creditors"). As I have stated, there are no similar allegations that Colker voluntarily injected himself into the controversy surrounding *Grant v. WWE*. Moreover, the limited record of which I may take judicial notice at the motion-to-dismiss stage does not suggest that the public interest in *Grant v. WWE* is comparable to the "intense debate, discussion and scrutiny within the media, the government, the courts, the medical licensing boards and, of course, the general public" observed in *Zupnik*. *Id.* at 73.

I reject Defendants' argument—presented via footnote—that Peak Wellness is an involuntary public figure. *See* Defs.' Mem. 16 n.14.

In sum, I conclude that Defendants have not met their burden of establishing that Colker is a public figure. Moreover, because Defendants argued that Peak Wellness is a public figure only by virtue of its association with Colker, I similarly conclude that Peak Wellness is not a public figure. Because it is conceivable that discovery may uncover further evidence that would alter the above analysis, Defendants may renew their arguments concerning public figure status at summary judgment. *See, e.g.*, *Carney v. St. John*, No. 25-CV-2525 (LAK), 2025 WL 2961622, at *9 (S.D.N.Y. Oct. 20, 2025).

## IV.    CONCLUSION

Defendants' sole argument for dismissal rests on the premise that Plaintiffs should be classified as public figures. Because I cannot say at this juncture that Plaintiffs are public figures, the Motion to Dismiss is denied.

Defendants shall respond to the Complaint on or before April 6, 2026. The parties are directed to meet and confer to prepare a Local Rule 26(f) report, which shall be filed on or before April 20, 2026. The court will thereafter convene a scheduling conference.

**SO ORDERED.**

New Haven, Connecticut
March 13, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge