**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| CARLON M. COLKER, M.D., an individual, and PEAK WELLNESS, INC., a Connecticut corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ANNE CALLIS, an individual, and HOLLAND LAW FIRM LLC, a Missouri limited liability company,<br><br>Defendants. | Case No.: 3:25-cv-00711-RNC |

**<u>MOTION FOR DISCOVERY CONFERENCE</u>**

Plaintiffs, CARLON M. COLKER, M.D. ("Dr. Colker") and PEAK WELLNESS, INC. ("Peak Wellness") (collectively, "Plaintiffs"),  by and through the undersigned counsel and pursuant to the Court's April 28, 2026 Scheduling Order [D.E. 72] and D. Conn. L. Civ. R. 37, respectfully move for an on-the-record discovery conference to address unresolved disputes concerning Defendants' assertion of the attorney-client privilege and work product doctrine in response to Plaintiffs' First Sets of Interrogatories, First Requests for Production, and First Requests for Admission (collectively, the "Discovery Requests").[1]

**RELEVANT FACTUAL BACKGROUND**

This defamation *per se* action arises from an October 15, 2024 press release and YouTube press conference in which Defendant Ann Callis publicly accused Dr. Colker and his medical practice, Peak Wellness, of serious criminal and professional misconduct. Among other things, Callis stated that Dr. Colker injected a patient with "unknown substances," "forced her to accept

---

[1] Plaintiffs separately served a First Set of Interrogatories, First Request for Production, and First Request for Admission on each Defendant.

intravenous infusions of unknown contents," directed her to take "mystery pills," "coerced" her into continuing treatment, and was "on McMahon's payroll" while improperly accessing her private medical records. *Compl.* ¶¶ 56, 58, 63.

Plaintiffs allege that the accusations were false and that Callis knew it. Before issuing the press release and holding the press conference, Callis had received the patient's complete medical records on several occasions—including March 5, April 17, and August 30, 2024—and those records contradicted the accusations she later made. *Compl.* ¶¶ 64–66. The accusations appeared in no court filing. *Id.,* ¶¶ 53, 70–72. The Discovery Requests seek the facts supporting each accusation, what Callis knew and investigated, and how the accusations were prepared and disseminated. Defendants have withheld that information based on attorney-client privilege and work-product protection.

**THE DISCOVERY DISPUTE REQUIRING RESOLUTION**

Plaintiffs served the Discovery Requests on August 7, 2025. After the Court stayed discovery pending resolution of Defendants' motion to dismiss, Defendants served their responses on May 19, 2026, following the denial of that motion. Plaintiffs then sent a detailed deficiency letter on June 10, 2026 and conferred with Defendants under Local Rule 37(a) on June 19, 2026. Although Defendants agreed to serve amended responses by June 26, 2026, they have not done so. Plaintiffs anticipate that the amended responses may resolve certain non-privilege issues and reserve the right to raise any that remain unresolved. This Motion addresses Defendants' privilege and work-product objections to the core discovery, which fall into five categories:

(a)    **Factual basis for the ten challenged statements — Interrogatories Nos. 8–17:** Defendants invoked the attorney-client privilege and the work product doctrine and answered these

Interrogatories by stating that the statements were based on information from the patient and/or a review of her medical records.

**(b)     Verification and investigation of the challenged statements (whom Defendants consulted to verify their accuracy and what research or investigation they conducted before publication) — Interrogatories Nos. 5 and 6:** Defendants invoked the work-product doctrine and described no investigation.

**(c)     Documents and communications concerning preparation and dissemination of the press release and press conference — Requests for Production Nos. 17 and 18:** Defendants claimed that the materials were protected because they were "inextricably intertwined with the filing of a brief."

**(d)     Communications with the public relations firm and the media concerning the challenged statements — Requests for Production Nos. 5–15:** Defendants asserted the attorney-client privilege, the work product doctrine, and objections based on vagueness and relevance.

Additionally, Defendants' responses represented that "[a] privilege log will be provided in accordance with Fed. R. Civ. P. 26(b) and Local Rule 26(e)," but did not serve any log until the eve of this filing, and its adequacy remains under review.

### *Plaintiffs' Position*

Defendants invoke the attorney-client privilege and work-product doctrine to shield nearly every aspect of the challenged accusations—from the facts on which they relied and the investigation they alleged to have conducted to the preparation and dissemination of the press release and press conference. Those protections do not extend so far. The disputed requests seek

nonprivileged information directly bearing on what Defendants knew and what they did before publication, and how they prepared and publicized the accusations.

*First*, the public accusations and the facts underlying them are not privileged. Attorney-client privilege protects confidential legal communications. The work product doctrine protects materials prepared in anticipation of litigation. A press release and a YouTube press conference are public, not confidential, and neither doctrine shields the facts supporting them. The privilege "only protects disclosure of communications. It does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The accusations made by Defendants appeared in no court filing, and Defendants publicly named Plaintiffs in those accusations. *Compl.* ¶¶ 53, 70–72. Connecticut law likewise recognizes that "publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." *Kelley v. Bonney*, 221 Conn. 549, 576 (1992); *accord Khan v. Yale Univ.*, 347 Conn. 1, 19 (2023).

*Second*, Defendants placed the asserted bases for the accusations at issue. Defendants identify the patient's statements and medical records as the basis for the accusations, and their defenses of substantial truth and fair report depend on what Callis knew and investigated before publishing. Defendants cannot rely on those materials while withholding the related facts and communications. *Hutchinson v. Farm Family Cas. Ins. Co.*, 273 Conn. 33, 38–40 (2005); *see Herbert v. Lando*, 441 U.S. 153, 169–75 (1979) (a defamation defendant's investigative and editorial process is discoverable).

*Third*, communications with SKDK are not privileged merely because counsel participated in those communications. SKDK is a public relations firm, not counsel. Defendants must establish that a particular communication was necessary to obtain or provide legal advice, not merely useful

to a public relations or media strategy. Otherwise, it is not privileged. Disclosure of privileged material to SKDK also waived protection as to the material shared.

*Fourth*, Defendants' privilege log is untimely, and its adequacy remains in question. Although Defendants agreed during the June 19, 2026 conference to serve a privilege log, and represented in their discovery responses that one would be provided, no log was served until the eve of this filing. Rule 26(b)(5)(A) and Local Rule 26(e) require enough information to assess each privilege claim, and in this District an inadequate or untimely privilege log may be grounds to find waiver. *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D. Conn. 2006).

*Fifth*, at a minimum, the record warrants *in camera* review under the crime-fraud exception. Communications made in furtherance of fraud or tort are not privileged. *Olson v. Accessory Controls & Equip. Corp.*, 254 Conn. 145, 175–77 (2000). Callis allegedly possessed records contradicting the accusations, omitted the accusations from the court filing, and consulted no one beyond her client before publishing. That showing is sufficient to permit *in camera* review. *See United States v. Zolin*, 491 U.S. 554, 572 (1989).

Taken together, these issues warrant an on-the-record conference and an order requiring complete responses, production of non-privileged materials, and a compliant privilege log, with an in camera review where necessary. Plaintiffs are also prepared to submit supplemental briefing addressing the privilege and work-product issues as applied to the specific discovery requests, should the Court find further briefing helpful.

### *Defendants' Position*[2]

---

[2] Counsel for the Defendants (Gondek, T.) provided this section for insertion into the instant motion.

Defendants first submit that the instant motion, as contemplated by the Plaintiffs, is an improper format for the adjudication of this dispute as it presents a severely abbreviated summary of both the background of the instant dispute as well as of the legal principles at play.  Defendants believe that any dispute over the applicability of the attorney-client privilege and the work-product doctrine with respect to the Plaintiffs' discovery requests will require formal briefing from both sides.

However, Defendants will respond briefly so as to apprise the Court of their basic position. First, Plaintiffs take the position that the press release and press conference were public and not confidential.  While this may be true, it ignores the fact that both the press release and the press conference arose out of and were intertwined with the Defendants' representation of their client in two ongoing legal matters.  Plaintiffs directly seek information and production related to Defendants development of their legal strategy in both cases, including but not limited to the investigation of facts, development of attorney opinion, preparation of documents, communication between members of the litigation team, and more. (Plaintiffs' reliance on the *Upjohn* case here is curious, as that case upheld the attorney client privilege.)

Additionally, Plaintiffs mischaracterize their own discovery requests.  For example, Plaintiffs' requests for production nos. 5-15 did not merely seek "communications with the public relations firm and the media", but rather "any documents and communications exchanged between You and any Person."  Similarly, requests for production nos. 17 and 18 did not simply ask for "documents and communications concerning preparation and dissemination of the press release and press conference" but "communications with [Defendants' client] or co-counsel concerning

the public dissemination, media coverage, or reputational impact of the Pre-Suit Discovery Action."

Next, Plaintiffs rely on cases which are inapplicable to the contours of the instant matter, by noting that a defamation defendant's investigative and editorial process is discoverable. The Defendants in this case are not members of the media, and Plaintiffs fail to appreciate the nature of the attorney-client privilege; that is, the privilege is held by the client. This is a basic principle of our legal system: "[The] privilege is that of the client alone." *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S. Ct. 125, 127 (1888), 128 U.S. 464. Defendants cannot be compelled to disclose information provided by their client, nor is the privilege the Defendants' to waive, as they are not the ones who hold it.

Plaintiff also takes the position that communications with SKDK cannot be privileged, or that the sharing of information with SKDK otherwise waives any privilege protections. This runs contrary to established law. The *Kovel* doctrine has long established that consultants can be included within the attorney-client privilege where a consultant is "highly useful" to legal advice and strategy. Courts have extended these protections to public relations firms. See, e.g., *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003). Additionally, the work-product doctrine has routinely been held to apply to material shared with consultants such as public relations personnel. See, e.g., *.Lively v. Wayfarer Studios LLC*, No. 24-cv-10049 (LJL), 2025 U.S. Dist. LEXIS 175127 (S.D.N.Y. Sep. 9, 2025); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

Defendants have as provided a privilege log detailing the items withheld based on both the attorney-client privilege and work-product doctrine. Defendants also take issue with Plaintiffs'

assertion that they "allegedly possessed records contradicting the accusations . . ." The "allegation" comes from Plaintiffs, who have refused – in response to Defendants' own discovery requests – to detail which records purportedly contradict those accusations. Defendants would also note that some of the items withheld on the basis of either privilege are so blatantly impermissible for the purposes of discovery (such as communications solely between Defendants and their co-counsel in the underlying litigation, or between Defendants and their client, etc.) that there is absolutely no need for any further debate, nor an in camera review, with respect to many of the items in question.

However, as noted above, Defendants believe that full briefing would be required on the applicability of the attorney-client privilege and work-product doctrine if there are items in dispute, given the unique nature of the factual background of this case and the parties involved. Defendants agree that this would be most appropriate for discussion at a discovery conference with the Court.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court schedule a discovery conference to address the privilege disputes summarized above and grant such further relief as the Court deems just and proper.

Date: August 5, 2026

Respectfully submitted,

By: /s/ *Jalaine Garcia*

**Alejandro Brito**
Florida Bar No. 098442
*Pro Hac Vice Admitted*
Primary: abrito@britopllc.com
Secondary: apiriou@britopllc.com
**Jalaine Garcia**
Florida Bar No. 58632
*Pro Hac Vice Admitted*
Primary: jgarcia@britopllc.com
**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071

**Dennis M. Durao**
KARSTEN & TALLBERG, LLC
500 Enterprise Drive
Suite 4B
Rocky Hill, CT 06067

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on August 5, 2026 upon:

Timothy Gondek
Hannah Meyers
LEWIS BRISBOIS BISGAARD &
SMITH, LLP
185 Asylum Street, Suite 2603
Hartford, Connecticut 06103
Timothy.Gondek@LewisBrisbois.com
Hannah.Meyers@LewisBrisbois.com
hartfordservice@lewisbrisbois.com

Alexa T. Millinger
William S. Fish, Jr.
HINCKLEY ALLEN & SNYDER LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
amillinger@hinckleyallen.com
wfish@hinckleyallen.com

*Counsel for Defendants*

By: /s/ *Jalaine Garcia*