**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CARLON M. COLKER, M.D., an individual, and PEAK WELLNESS, INC., a Connecticut corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ANNE CALLIS, an individual, and HOLLAND LAW FIRM LLC, a Missouri limited liability company,<br><br>Defendants. | Case No.: 3:25-cv-00711-SFR |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**
**AND IN RESPONSE TO DEFENDANTS' PRIVILEGE BRIEF**

Plaintiffs, CARLON M. COLKER, M.D. ("Dr. Colker") and PEAK WELLNESS, INC. ("Peak Wellness") (together, "Plaintiffs"), submit this reply in support of their Motion to Compel Complete Responses to Plaintiffs' Discovery Requests and to Overrule Defendants' Improper Privilege and Work Product Objections with Incorporated Memorandum of Law (the "Motion to Compel") (Doc. No. 82) and in response to the Brief Concerning the Application of the Attorney-Client Privilege and Work-Product Doctrine ("Defendants' Brief") (Doc. No. 81), filed by Defendants, ANNE CALLIS ("Callis") and HOLLAND LAW FIRM LLC ("Holland Law") (together, "Defendants"), and state as follows:

**PRELIMINARY STATEMENT**

Callis accused Dr. Colker — publicly, to more than sixty reporters and in a live YouTube press conference — of injecting a patient with "unknown substances," forcing infusions of "unknown contents" on her, giving her "mystery pills," and being "on McMahon's payroll." *See* Dkt. 82 at pp. 2, 5-8. Having leveled those false accusations of criminal conduct before the world, Defendants now refuse to identify any supporting fact or record, and withhold the materials used

to create and publish those accusations.

Defendants' Brief does not justify that refusal. Ms. Grant's privilege does not shield the underlying facts; engagement agreements do not create privilege; and materials prepared for press releases, reporter responses, television appearances, or media tracking are public relations materials – *not litigation strategy*.

The decision in *Lively v. Wayfarer Studios LLC* rejected the same categorical theory in communications involving The Agency Group – one of the very same public relations firms that Defendants used here. A media campaign is not litigation, and a lawyer's involvement in the media campaign does not make it privileged. Plaintiffs are entitled to the facts behind the public accusations of criminal conduct and to the materials that produced them. The Court should grant the Motion to Compel.

## ARGUMENT

### I. Defendants Cannot Withhold the Facts Behind Their False Accusations.

#### A. No privilege shields the facts on which Callis based her accusations.

Interrogatories 8–17 seek the factual basis for each public accusation. These are contention interrogatories expressly authorized by Rule 33(a)(2), which provides that an interrogatory "is not objectionable merely because it asks for an opinion or contention that relates to fact." *See Omega Engineering, Inc. v. Omega, S.A.,* 2001 WL 173765, at *5 (D. Conn. Feb. 6, 2001) (compelling defendant to "provide the factual basis . . . for each affirmative defense it has asserted"). Yet, Defendants answered every interrogatory in the same way — a privilege objection followed by a non-answer. When asked for the basis of the accusation that Dr. Colker "forced" infusions of "unknown contents," Callis objected on privilege grounds, and then offered only that her statement was "based upon information relayed to the defendant by Patient, as well as a review of Patient's

medical records." Dkt. 82-2 (Exhibit B), No. 8. Across Interrogatories 8–17, Defendants identify no fact behind any accusation of criminal wrongdoing.

Neither privilege reaches the facts that an accuser relied on. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The work product doctrine is no different – "either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). And the burden of establishing that any privilege applies rests on the party invoking it — a burden not carried "by mere conclusory or ipse dixit assertions." *Lively v. Wayfarer Studios, LLC,* 2025 WL 2606904, at *3 (S.D.N.Y. Sept. 9, 2025).

Ms. Grant's privilege does not shield facts held by Callis and Holland Law, the parties that formulated and published the accusations. Defendants should be required to serve complete answers to the interrogatories and produce responsive, non-privileged documents.

**B. Defendants cannot use privileged communications as both sword and shield.**

Answering the factual-basis interrogatories, Callis invoked privilege but then affirmatively asserted that each statement was "based upon information relayed ... by Patient" and "a review of Patient's medical records." Callis has simultaneously pleaded the affirmative defenses of substantial truth, opinion, fair report, and the absence of actual malice. Dkt. 64, Aff. Defenses Nos. 2, 4, 5, 6. Ms. Grant's ownership of the privilege does not permit Defendants to use the substance of her communications as evidence while blocking Plaintiffs from testing that evidence. Under Second Circuit law, an at-issue waiver arises when a party affirmatively relies on privileged advice to establish a claim or defense. *In re County of Erie*, 546 F.3d 222, 228-29 (2d Cir. 2008); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Callis has stated that her accusations were


**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

based on information relayed by Ms. Grant and on Callis's review of Ms. Grant's records. Dkt. 82 at pp. 17-19. If Defendants rely on the substance of those communications to support their defenses of truth, fair report, good faith, or lack of actual malice, they must disclose the communications on which they rely. If they preserve the privilege, they must forgo that reliance and abandon those affirmative defenses.

Callis's pre-publication knowledge and investigation are central to the merits. In *Herbert v. Lando*, the Supreme Court held that a defamation plaintiff may inquire into what the publisher knew, learned, believed, and considered before publication. 441 U.S. 153, 160, 169-75 (1979). That inquiry reaches the non-privileged communications among Callis, counsel, and the publicists concerning the accuracy, wording, and publication of the challenged statements.

The records accusation demonstrates why that discovery is essential. Callis accused Plaintiffs of "improperly with[holding]" records and engaging in "secrecy and evasion." Dkt. 1, ¶ 56. Yet the Complaint alleges that Peak Wellness produced Ms. Grant's records four times before Callis made those statements. *Id.* ¶¶ 38-45, 51. Callis has taken the position that her accusation rested on her "personal experience attempting to retrieve" the records. Dkt. 82 at pp. 19.

## II. The Press Materials Are Not Work Product.

Work product turns on the purpose of the communication, not on who was copied. The withheld emails and drafts concern the press campaign: preparing the release, drafting reporter Q&A, coordinating the rollout, and timing publication. These communications were created to deliver a public message, not to advance a case before a court. The work product doctrine protects materials for "the conduct of litigation itself." *Calvin Klein Trademark Tr. v. Wachner,* 198 F.R.D. 53, 55 (S.D.N.Y. 2000). A "lawyer's decision to conduct a media campaign . . . does not transform


**Brito, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

[her] coordination of a campaign into legal advice." *Lively*, 2025 WL 2606904, at *5 (quoting *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. 2003)).

The privilege log entries confirm the communications' publicity function. They include a media coverage report (Dkt. 82-9 (Exhibit I), Entry 44), press release and media advisory drafts (Entries 45-46), a "Tough Q&A" document prepared by SKDK (*Id.*, Entry 91), press briefing materials and media talking points (*Id.*, Entries 93, 95), and "filing plan" chains circulated to publicists to coordinate the press rollout (*Id.*, Entries 96-97, 101-102, 104, 106). Defendants cannot convert those communications into work product by repeatedly labeling the publicity campaign "intertwined" with litigation.

The WWE Litigation is Ms. Grant's pending action against McMahon and WWE, in which Dr. Colker is not a defendant. The Bill of Discovery Action was a pre-action petition that sought records "to determine whether" claims might exist (Dkt. 82-10 (Exhibit J), ¶¶ 24-27). The press campaign was neither. It was a broadcast to sixty reporters and a live YouTube audience. The existence of the first two matters does not protect communications created to carry out the third.

The campaign's content reinforces that conclusion. Although the Bill of Discovery Action sought information to determine whether claims existed, the press campaign publicly and definitively asserted that Dr. Colker injected a patient with "unknown substances," "forced" infusions of "unknown contents," and prescribed "mystery pills." Those false accusations appear in no court filing and were presented to the public as established facts, not as issues for judicial resolution. Communications created to formulate and broadcast those accusations were not prepared "because of" litigation and are not work product. *Lively*, 2025 WL 2606904, at *5.

The governing distinction is direct. Confidential analysis concerning briefs, filings, or strategy before a court may qualify as work product. Communications concerning accusations



**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

against Dr. Colker, press releases, reporter Q&A, media talking points, coverage tracking, or the timing of publication do not. The Court should apply that distinction to each document and, where necessary, to each portion of a document.

The same distinction provides a straightforward procedure for the Court's *in camera* review. If a document combines protected strategy concerning the WWE Litigation or Bill of Discovery Action with material concerning Dr. Colker or Peak Wellness, the Court may order production with the litigation strategy portions redacted. Defendants have already acknowledged that targeted redaction is feasible by proposing that documents be produced with material unrelated to Plaintiffs redacted. Dkt. 81 at pp. 13-15, 23. The Court should therefore require Defendants to produce all portions concerning Dr. Colker or Peak Wellness and permit redaction solely of material that Defendants establish reflects protected litigation strategy. Defendants bear "the burden of establishing" that each withheld portion is protected. *United States v. Mejia,* 655 F.3d 126, 132 (2d Cir. 2011). Any portion that they cannot establish was prepared for a litigation purpose should be produced.

**III. Defendants Boilerplate Log Does Not Establish Privilege.**

Consistent with the Court's direction at the discovery conference, Plaintiffs' Motion narrowed the *in camera* request to a discrete, high-priority set of entries most clearly tied to the press campaign: Log Entries 44-46, 58, 90-91, 93, 95-97, 100-102, 104, and 106.

The party asserting privilege bears the burden of establishing it as to each document, and that burden "is not discharged by mere conclusory or ipse dixit assertions." *Lively*, 2025 WL 2606904, at *3; *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2013 WL 6044342, at *1 (D. Conn. Nov. 14, 2013). Defendants do not carry that burden here. Their log meets each targeted entry with the same two moves: a subject line stamped "Privileged &


**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

Confidential," and a description that recites the words "litigation team" or "litigation strategy." Neither establishes privilege. A party cannot manufacture protection by typing "Privileged & Confidential" into a subject line, and a description that labels a document "litigation strategy" is the conclusion Defendants must prove, not proof of it.

The entries themselves refute the labels. What Defendants describe as privileged "litigation" material is, by the log's own account, the output of a press operation:

- Entry 44 is a "9/26 Media Coverage Report – Documentary Coverage" — a media-monitoring summary, tagged work product for the "WWE Litigation." Dkt. 82-9, Entry 44.

- Entries 45-46 concern a "Press Release Draft," described only as "providing privileged communication." *Id.*, Entries 45-46.

- Entry 91 is a "Tough Q&A Document" from PR consultant J. Klain, which the log recasts as "addressing [an] upcoming conference." *Id.*, Entry 91.

- Entries 93 and 95 are "Prep Docs for Today's Press Briefing" and an "NBC/NewsNation Briefing Memo and Talking Points," from PR consultant J. Lee — described, respectively, as "providing privileged documents" and "enclosing [a] confidential document." *Id.*, Entries 93, 95.

- Entries 96-97, 101-102, 104, and 106 are the "Filing Plan" chains that Defendants describe as "litigation strategy." These are publicity-rollout communications, timed to the filing — not the drafting of the brief itself. *Id.*, Entries 96-97, 101-102, 104, and 106.

Across these entries, Defendants' descriptions do not explain how a media coverage report, a press release, a reporter Q&A, or a press briefing memo reflects "strategizing about the conduct of litigation itself." They simply assert it. That is the "conclusory" showing *Lively* and *A & R Body Specialty* hold insufficient — and it is precisely the material that *Lively* ordered be produced after an *in camera* review. At a minimum, the labels cannot be taken at face value. The documents should be examined for what they are.

## IV. Engagement Letter Labels Do Not Create Privilege.

Unable to defend the documents on their content, Defendants try to manufacture a privilege by contract — pointing to the SKDK agreement reciting that its work "is considered attorney work product and/or ... attorney-client privilege[d]," and The Agency Group agreement labeling its services "litigation support." But privilege does not work that way. It turns on the content and purpose of each communication, not on a label affixed before the communication existed.

*Lively* forecloses this directly. There, too, The Agency Group was involved in communications claimed to be privileged, yet the court still compelled production of the pure public relations material after an *in camera* review, protecting only genuine "legal strategizing." 2025 WL 2606904, at *5-6. Defendants quote the half of *Lively* that protects strategy while omitting the half that compels the publicity. The part they leave out is the part that governs here. As *Lively* confirms, "[b]eing sensitive to public relations considerations ... does not make the public relations ... experts part of the legal strategy." *Id.* at *5. Talking points, coverage reports, and reporter Q&A do not become privileged because an engagement letter says so.

## V. Disclosure to the PR Consultants Waived the Attorney-Client Privilege.

The attorney-client privilege claim can be resolved without inspecting a single document. The privilege protects only *confidential* attorney-client communications, and "the disclosure to a third party ... of a communication with his attorney eliminates whatever privilege the communication may have originally possessed." *Lively*, 2025 WL 2606904, at *4. A public-relations consultant is ordinarily a third party. Defendants' own log shows that a PR consultant received every targeted entry, except Entry 44. *See* Dkt. 82-9. Absent an applicable exception, this alone ends the inquiry. The privilege was waived the moment each communication was shared, and Defendants "could not, by including lawyers in those communications, shield the materials


BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

from discovery ... under the attorney-client privilege." *Lively,* 2025 WL 2606904, at *5. No recital in an engagement letter survives the consultants' actual presence on the emails.

Nor does the work product doctrine protect the communications. Unlike the attorney-client privilege, work product turns on the *content* of a communication, not on who received it — so the analysis shifts from the recipient to what the document is. None is "strategizing about the conduct of litigation itself," *Calvin Klein*, 198 F.R.D. at 55, so none was ever work product to begin with. The "WWE Litigation" tag that Defendants append to some of these entries changes nothing — a report tracking press coverage is not litigation strategy no matter which case it mentions. These entries should be produced outright.

The attorney-client privilege analysis is no different for the "filing plan" chains (Entries 96-97, 100-102, 104, 106) – waived, like every other entry, by the consultants' presence. *See* Dkt. 82-9. On work product, Defendants' own descriptions give them away: these are "filing plan" chains circulated to the PR consultants, and Entry 106 attaches a "Press Call Briefing." *Id.* Their dominant purpose was coordinating the press rollout – timing, messaging, reporter Q&A – which is not work product for the reasons already stated. If any portion of these chains reflects genuine brief-drafting strategy, that content can be redacted on *in camera* review. The doctrine does not let Defendants withhold the entire chain because a litigation strategy sentence is buried among the publicity. *Calvin Klein*, 198 F.R.D. at 55. The remainder should be produced.

## VI. Equity Favors Disclosure of the Accusations' Basis.

Defendants' final appeal is to equity — Ms. Grant's interests as a non-party and the pending WWE Litigation. But the equities cut against them. This is not a case where litigation communications inadvertently touched on a third party. Ms. Grant's counsel made a deliberate choice to take these matters to the public: they retained two public relations firms, prepared talking


**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

points and reporter Q&A, drafted a press release, and delivered categorical accusations of criminal conduct to sixty reporters and a live YouTube audience. Having chosen the most public forum available to accuse Dr. Colker, Defendants cannot now recast that campaign as protected litigation to keep its basis from him.

The harm that Defendants' deliberate choice inflicted belongs in the balance. Dr. Colker is a physician who was publicly branded a criminal — accused of drugging a patient with "unknown substances" and protecting McMahon's interests above those of his patients. False and defamatory accusations like those are devastating to a doctor's reputation and practice, which is precisely why the law of defamation exists and why a defamation plaintiff is entitled to discover their factual basis. Defendants seek to deny Dr. Colker that basic discovery — the facts behind the charge and the communications that produced it — by recasting their own publicity campaign as confidential litigation. A lawyer who falsely accuses a physician of crimes before the press does not get to make the accusation publicly and defend it privately.

Plaintiffs do not seek genuinely privileged WWE Litigation strategy, and the Court's *in camera* review will protect anything that qualifies. What Plaintiffs seek – and what Dr. Colker is entitled to – is the basis for the public accusations made against him.

## **CONCLUSION**

For the reasons set forth herein and in Plaintiffs' Motion to Compel, Plaintiffs respectfully request that the Court (a) grant their Motion to Compel; (b) overrule Defendants' attorney-client privilege and work-product objections as set forth herein and in the Motion to Compel; (c) compel Callis to serve complete answers to Interrogatories 6 and 8–17; (d) compel Holland Law to serve complete answers to Interrogatories 5 and 8–17; (e) compel Callis to properly respond to and produce all non-privileged documents responsive to Requests for Production Nos. 1 and 5–14; (f)

compel Holland Law to properly respond to and produce all non-privileged documents responsive to Requests for Production Nos. 1, 5–8, 10, and 12–20; (g) conduct an *in camera* review of the log entries listed above and order production of the non-privileged portions; and (h) grant such further relief as the Court deems just and proper.

Date: September 16, 2026

Respectfully submitted,

By: */s/ Alejandro Brito*
**Alejandro Brito**
Florida Bar No. 098442
*Pro Hac Vice Admitted*
Primary: abrito@britopllc.com
Secondary: apiriou@britopllc.com
**Jalaine Garcia**
Florida Bar No. 58632
*Pro Hac Vice Admitted*
Primary: jgarcia@britopllc.com
**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071

**Dennis M. Durao**
KARSTEN & TALLBERG, LLC
500 Enterprise Drive
Suite 4B
Rocky Hill, CT 06067

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 16, 2026, a copy of the foregoing was filed electronically on the Court's CM/ECF system to all counsel of record:

Timothy Gondek
Hannah Meyers
LEWIS BRISBOIS BISGAARD & SMITH, LLP
185 Asylum Street, Suite 2603
Hartford, Connecticut 06103
Timothy.Gondek@LewisBrisbois.com
Hannah.Meyers@LewisBrisbois.com
hartfordeservice@lewisbrisbois.com

Alexa T. Millinger
William S. Fish, Jr.
HINCKLEY ALLEN & SNYDER LLP
20 Church Street, 18th Floor
Hartford, Connecticut 06103
amillinger@hinckleyallen.com
wfish@hinckleyallen.com

*Counsel for Defendants*

By: */s/ Alejandro Brito*