UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARLON M. COLKER, *M.D., an individual*, and PEAK WELLNESS, INC., *a Connecticut corporation* | : | 3:25-CV-711(SFR) |
| V. | : | |
| ANNE CALLIS, *an individual*, and HOLLAND LAW FIRM, LLC, *a Missouri limited liability company* | : | October 29, 2026 |

**RULING ON PLAINTIFF'S MOTION TO COMPEL**

Before the Court is the plaintiffs' motion to compel the answers to interrogatories and the production of documents that have been withheld on the basis of the attorney-client privilege and the work product doctrine. (Doc. No. 82). On April 21, 2026, the district judge (Russell, J.) referred this defamation action to the undersigned to set a scheduling order. (Doc. No. 69). The district judge also stated: "Any future discovery matters that arise will also be referred to Judge Spector." (*Id.*). On August 5, 2026, the parties filed a motion for a discovery conference. (Doc. No. 77). The Court held a discovery conference on August 19, 2026, during which the parties raised the instant dispute, and a simultaneous briefing schedule was set. (Doc. No. 80). On September 11, 2026, the plaintiff filed a motion to compel discovery, which is now fully briefed. For the following reasons, the Court GRANTS in part and DENIES in part the motion to compel.

## I. FACTUAL BACKGROUND

Plaintiff Carlon M. Colker, M.D., is a licensed physician who founded and operates Plaintiff Peak Wellness, Inc., a practice that includes "wellness programs and traditional and

integrative treatments." (Doc. No. 1 ¶¶ 17–18). From November 2019 through April 2022, the plaintiffs treated Janel Grant. (*See id.* ¶¶ 21–29).

On January 25, 2024, Ms. Grant filed a lawsuit against her former employer, World Wrestling Entertainment ("WWE") and its then-Chief Executive Officer Vincent K. McMahon, alleging violations of the Trafficking Victims Protection Act ("TVPA"), sexual battery, assault, and other related statutory violations and tort claims. *Grant v. WWE et al.*, Case No. 3:24-cv-90(SFR) ("WWE Litigation").[1] Defendants Anne Callis and Holland Law Firm, LLC ("Holland Law") represented Ms. Grant in the WWE Litigation along with counsel from two additional law firms, Hurwitz Sagarin Slossberg & Knuff, LLC and Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins"). *See id.* Shortly before initiating the WWE Litigation, Holland Law and another firm, Brown Rudnick, LLP, had jointly retained The Agency PR Group LLC ("The Agency Group") as the "exclusive public relations counsel to assist with mutually agreed strategic communication services, including but not limited to crisis management and litigation support" in the WWE Litigation. (Doc. No. 81 at 27 (Ex. A at 1)).

On June 11, 2024, based on the parties' mutual request, the district court stayed the WWE Litigation for a period of six months. (Doc. No. 68).

On July 23, 2024, Ms. Grant filed a bill of discovery action against Dr. Colker and Peak Wellness in Connecticut Superior Court. *See Janel Grant v. Carlon M. Colker, et al.,* FST-CV24-6068091-S ("Bill of Discovery Action"). Ms. Grant sought her medical records and metadata, Dr. Colker's and Peak Wellness's recordkeeping and billing procedures, payment records concerning Ms. Grant, the payment arrangement with Mr. McMahon and/or the WWE, the purpose of Ms. Grant's treatment, the substance of Ms. Grant's treatment, communications between Dr. Colker

[1] The plaintiff also named as a defendant John Laurinaitis, who was subsequently voluntarily dismissed with prejudice by stipulation. (Doc. No. 120).

and Mr. McMahon about Ms. Grant, and Dr. Colker's involvement in recommending an attorney for Ms. Grant's non-disclosure agreement.[2] (Bill of Discovery Action, Doc. No. 103.31 ¶ 24).

On August 29, 2024, Dr. Colker and Peak Wellness filed a motion to dismiss. (Bill of Discovery Action, Doc. No. 104.00). They argued the state court lacked subject matter jurisdiction, in relevant part, because Ms. Grant sought discovery related to allegations in a pending federal lawsuit that had been stayed. (Bill of Discovery Action, Doc. No. 104.00).

On September 4, 2024, Holland Law and Nelson Mullins retained SKDKnickerbocker LLC ("SKDK"), with Ms. Grant's authorization, "to assist Nelson Mullins and [Holland Law] in their work." (Doc. No. 81 at 32 (Ex. B at 1)). The retainer agreement indicated that SKDK had already been advising Ms. Grant "regarding a communication matter (the 'Matter')" and that "Nelson Mullins and [Holland Law] are engaging SKDK to provide public relations services in support of the Matter." (*Id.*). The agreement specified that SKDK would "work under the direction of" the two law firms and that "SKDK agrees to provide consultation and public relations services in connection and in furtherance of the legal services Nelson Mullins and HLF are providing to [Ms. Grant]." (*Id.*). The following paragraph explained that SKDK's work would be considered attorney work product and protected by the attorney-client privilege, and that SKDK must retain confidentiality of such materials absent the law firms' written consent. (*Id.*).

On October 15, 2024, Ms. Grant, through her attorneys, filed an opposition to the motion to dismiss. (Bill of Discovery Action, Doc. No. 107.00). In this opposition, Ms. Grant stated, "Upon information and belief, McMahon, through Defendants, obtained access to Ms. Grant's private medical information and dictated treatments she was to receive as part of his pattern of coercive control over every intimate aspect of her life." (*Id.* at 1). She argued that she was merely

---

[2] The Court cites publicly available filings on the Bill of Discovery Action for the purpose of summarizing information relevant to this ruling.

requesting her own medical records, which she was statutorily entitled to receive, but that Dr. Colker and Peak Wellness had been improperly withholding portions of her records and had only given her an incomplete paper copy. (*Id.* at 2).

Immediately after filing the opposition, Callis distributed a press release to national and international media outlets. (Doc. No. 1 ¶ 54).

Callis stated, in relevant part, "Our filing today makes clear that Dr. Colker violated ethical and medical standards when he injected unknown substances into [Patient's] body and directed her to take unlabeled pills while dismissing her basic questions about those drugs." (*Id.* ¶ 56 (emphasis removed)). Later that day, Callis held a press conference where she made several statements, including the following: Dr. Colker "violated ethical and medical standards and routinely broke the doctor-patient trust integral to proper treatment"; Dr. Colker "directed [Patient] to take mystery pills daily and forced her to accept intravenous infusions of unknown contents"; Dr. Colker "was on McMahon's payroll and obtained access to [Patient's] private medical records, dictated her treatment, and often coerced [Patient] into continuing her treatment at Peak Wellness"; and the incomplete medical records "show that she was not getting any better with these treatments, with these infusions, with these unknown pills." (*Id.* ¶ 58).

On May 2, 2025, the plaintiffs filed the instant action, alleging that Callis's press release and press conference statements constituted defamation per se. (*Id.* ¶¶ 106–19). The plaintiffs listed several state and federal statutes that would have been violated had the alleged defamatory statements been true. (*Id.* ¶ 63). On July 29, 2025, the defendants filed a motion to dismiss and, shortly after, a motion to stay discovery while the motion to dismiss remained pending. (Doc. No. 43). The district judge granted the motion to stay, and the case was stayed until March 13, 2026, when the motion to dismiss was denied. (Doc. No. 62).

On April 21, 2026, the Court (Russell, J.) referred this case to the undersigned to preside over all discovery matters. (Doc. No. 69). Pursuant to the undersigned's preferences, the parties moved for a discovery conference on August 5, 2026. (Doc. No. 77). On August 19, 2026, the Court held a discovery conference wherein the parties raised a dispute about the defendants' withholding of discovery responses on the basis of attorney-client privilege and the work product doctrine. (Doc. No. 80). The Court ordered the parties to meet and confer to resolve the issues but permitted simultaneous briefing in the event that the parties could not reach a resolution. (*Id.*). The parties were unable to resolve the issues, filed briefing, including the plaintiff's motion to compel, and the issue became ripe for a ruling on September 16, 2026. (Doc. Nos 81–86).

## II. LEGAL STANDARD

### A. Motion to Compel

"[T]he scope of discovery is broad." *McCarroll v. Nardozzi*, No. 3:96CV00124 (AVC), 2004 WL 7333640, at *2 (D. Conn. Oct. 13, 2004). The "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Considerations must include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." *Huseby, LLC v. Bailey*, No. 3:20-cv-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021); *Hutchins v. Palmer*, No. CV 12-5927 (JFB) (AKT), 2015 WL 13713335, at * 7 (E.D.N.Y. Mar. 31, 2015) ("[A] party seeking discovery must make a prima facie

showing that the discovery sought is more than merely a fishing expedition"). After this burden has been met, the "party resisting discovery [then] bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009). "Put differently, the moving party must make 'a *prima facie* showing of relevance,' after which 'it is up to the responding party to justify curtailing discovery.'" *Huseby*, 2021 WL 3206776, at *6 (quoting *Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018)).

"All '[m]otions relative to discovery,' including motions to compel, 'are addressed to the discretion of the court.'" *Mercer v. Rovella*, No. 3:16-CV-329 (CSH), 2022 WL 1514918, at *3 (D. Conn. May 12, 2022) (quoting *Soobzokov v. CBS*, 642 F.2d 28, 30 (2d Cir. 1981)). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Dauphinais v. Cunningham*, 395 F. App'x 745, 746-47 (2d Cir. 2010) ("[T]he federal rules give district courts broad discretion to manage the manner in which discovery proceeds, and we review discovery rulings for abuse of discretion.") (citations and internal quotation marks omitted).

**B. <u>Attorney-Client Privilege and Work Product Doctrine</u>**

In this diversity action, state law governs the attorney-client privilege. *See* Fed. R. Evid. 501 ("State law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Main Street Am. Ass. Co. v. Savalle*, No. 3:18CV02073(JCH), 2019 WL 6052975, at *4 (D. Conn. Nov. 15, 2019) (explaining that Connecticut state law governs the substance of the attorney-client privilege in a diversity case, but federal law governs the procedure). "Connecticut has a long-standing, strong public policy of protecting attorney-client communications." *Harrington v. Freedom of Info. Comm'n*, 323 Conn. 1, 11 (2016). The

privilege protects "both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 329 (2004). However, not every communication between lawyer and client is privileged. *See Harrington*, 323 Conn. at 14. "Because the privilege has the effect of withholding relevant information from the fact finder, it applies only where necessary to achieve its purpose." *Id.* at 12. Even when the privilege applies, it may be waived when it is placed "at issue," *i.e.* "when the contents of the legal advice [are] integral to the outcome of the legal claims of the action." *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 53 (1999). The burden is on the party invoking the privilege to prove it applies. *See id*.

Unlike the attorney-client privilege, the work product doctrine is governed by federal law. The work product doctrine was "codified for the federal courts in Fed. R. Civ. P. 26(b)(3)" with the intent "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). Rule 26(b)(3) states, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Such materials may be discovered, however, if they are discoverable under Rule 26(b)(1) and the movant "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. A court ordering the discovery of these materials "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id*. In other words, Rule 26 "recognizes

as work product both the factual fruits of an attorney's investigations—sometimes referred to as 'fact work product'—and an attorney's mental impressions and opinions—sometimes referred to as 'opinion work product'—but it affords absolute protection only to the latter while affording qualified protection to the former." *Am. Oversight v. U.S. Dep't of Just.*, 45 F.4th 579, 590–91 (2d Cir. 2022) (internal citations removed); *Loftis v. Amica Mut. Ins. Co*., 175 F.R.D. 5, 11 (D. Conn. 1997) ("Disclosure of opinion work product is particularly disfavored by the courts and requires a far stronger showing of necessity and unavailability by other means.").

"A party waives the work product protection by taking actions inconsistent with this its purpose. . . ." *New York Times Co. v. U.S. Dep't of Just.*, 939 F.3d 479, 494 (2d Cir. 2019). One way that work product protection may be waived is by "placing that document 'at issue' or by making 'testimonial use' of that document." *Id.* at 495. In some circumstances, a party's factual assertions may require the "involuntary forfeiture of privileges" out of fairness to the adversary. *Id.* "[U]nfairness may arise when a party advances a claim to a court or jury (or perhaps another type of decision maker) while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." *Id.* (citation modified). This implied "at issue" waiver requires "specific instances of unfairness that undermine the adversarial process, and this is inherently a case-by-case determination." *Id.*

## III. <u>DISCUSSION</u>

The plaintiffs seek interrogatory answers and document production that the defendants are withholding on the basis of the attorney-client privilege and work product doctrine.[3] The plaintiffs request that the Court overrule the defendants' objections and conduct an *in camera* review of

[3] The specific discovery requests are: Plaintiffs' First Set of Interrogatories to Callis (Nos. 6 and 8–17), Plaintiffs' First Set of Interrogatories to Holland Law (Nos. 5 and 8–17), Plaintiffs' First Requests for Production to Callis (Nos. 1 and 5–14), and Plaintiffs' First Requests for Production to Holland Law (Nos. 1, 5–8, 10, 12–20).

documents withheld on these bases. First, the plaintiffs argue that the facts underlying the public accusations are not privileged, and so the defendants should be compelled to answer the discovery requests seeking such facts. (Doc. No. 82 at 10–11, 15–18). Second, the plaintiffs claim that the work product doctrine does not protect the defendants from disclosing communications and documents that extend beyond the litigation documents and that are not a "fair and accurate" report of the filings. (*Id.* at 11–12). Third, the plaintiffs maintain that communications with public relations firms are not privileged. (*Id.* at 12–15). Fourth, the plaintiffs assert that the defendants cannot use the attorney-client privilege and the work product doctrine as a "sword and a shield," and they impliedly waived the privilege by making public statements. (*Id.* at 18–19). Fifth, the plaintiffs insist that Callis's pre-publication investigation and state of mind are relevant to whether she made the alleged defamatory statements with "actual malice." (*Id.* at 19–20).

Due to the simultaneous briefing schedule, the defendants filed an initial brief followed by a response to the plaintiff's motion. (Doc. Nos. 81, 85). In the initial brief, the defendants explain there are 40 documents from the privilege log that the plaintiffs have flagged for *in camera* review, and these documents have been properly withheld. The defendants contend that most of the documents are not relevant to the plaintiff's claims. (*See* Doc. No. 81 at 13, 17, 23). For any documents deemed relevant, the defendants contend that they are either subject to the attorney-client privilege, or both the attorney-client privilege and the work product doctrine. This includes communications between Ms. Grant and her attorneys (both the defendants and attorneys from other law firms) (*id.* at 11–12); Ms. Grant, her attorneys, and retained consultants (*id.* at 12–14); the defendants and Ms. Grants' attorneys from other law firms (*id.* at 14–17); and the defendants, Ms. Grants' attorneys from other law firms, and retained consultants (*id.* at 17–22).

In the opposition, the defendants contend that "this dispute is narrower than Plaintiffs' brief suggests." (Doc. No. 85 at 2). The defendants posit that the parties agree an *in camera* review would be beneficial, that the attorney-client privilege and work product doctrine extend to public relations consultants "when those consultants are integrated into a litigation team to implement a legal strategy," and that the attorney-client privilege does not extend to "underlying facts." (*Id.* at 2–3). From there, the defendants respond to the plaintiffs' five arguments. First, the attorney-client privilege is held by Ms. Grant and cannot be waived by her counsel. (*Id.* at 3). Second, with respect to communications involving the public relations firms, the cases cited by the plaintiffs actually support a finding that the attorney-client privilege protects the documents from production. (*Id.* at 3–6). Third, the work product doctrine extends to the documents shared with the public relations firms because they include "attorney strategy discussions, mental impressions, and legal theories." (*Id.* at 6–7). Fourth, the defendants are not using the attorney-client privilege and work produce doctrine as a "sword and a shield," because their discovery responses did not constitute an implied waiver. (*Id.* at 7–8). Fifth, the press release and press conference were connected to ongoing litigation and were not used as a "smear campaign." (*Id.* at 8–9). Finally, production of the withheld documents would prejudice Ms. Grant's ongoing litigation. (*Id.* at 9–10).

In the reply, the plaintiffs make a few additional points in response to the opposition. The plaintiffs explain that an "at-issue waiver arises when a party affirmatively relies on privileged advice to establish a claim or defense." (Doc. No. 86 at 3–4). They argue that the defendants cannot plead the affirmative defenses of "truth, fair report, good faith, or lack of actual malice" without disclosing communications relevant to these defenses. (*Id.*). In addition, the plaintiffs contend that communications about the press campaign are not privileged, and this is particularly

true where Callis made statements beyond the scope of the Bill of Discovery Action. (*Id.* at 5). The plaintiffs also argue that the privilege log and retainer agreements fail to establish privilege. (*Id.* at 6–7). Ultimately, the plaintiffs posit that equity favors disclosure and conclude with the following: "Plaintiffs do not seek genuinely privileged WWE Litigation strategy, and the Court's *in camera* review will protect anything that qualifies. What Plaintiffs seek – and what Dr. Colker is entitled to – is the basis for the public accusations made against him." (*Id.* at 10).

### A. <u>Interrogatories</u>

The plaintiffs seek interrogatories from Callis and Holland Law that can be grouped in two categories: (1) Callis Interrogatory 6 / Holland Law Interrogatory 5, which ask the defendants to describe the "independent research or investigation" that they conducted to "verify the accuracy of" the alleged defamatory statements made during the press release and press conference; and (2) Callis Interrogatories 8 through 17 / Holland Law Interrogatories 8 through 17, which ask the defendants to "[d]escribe in detail the factual basis for" specific statements (identified in each interrogatory) that are allegedly defamatory.[4]

#### 1. Callis Interrogatory 6 / Holland Law Interrogatory 5

For the first category, the specific interrogatory at issue states: "Describe in detail all independent research or investigation You conducted to verify the accuracy of the statement You made about Plaintiffs in the press release or press conference, including the nature of the research, the sources consulted, the dates of such efforts, and the identities of all persons involved." (Doc. No. 82-2 at 3; Doc. No. 82-4 at 3). The defendants object on the grounds that the requested information is work product connected to the briefing in the Bill of Discovery Action. (*Id.*). The plaintiffs do not directly address this interrogatory topic, but instead generally argue that Callis's

[4] Callis Interrogatory 6 is identical to Holland Law Interrogatory 5. Callis Interrogatories 8 through 17 are identical to Holland Law Interrogatories 8 through 17.

pre-publication investigation and state of mind are relevant to the claims and therefore discoverable. (Doc. No. 82 at 19–20).

The Court finds that this interrogatory is relevant to the claims and defenses. As the plaintiffs point out, "actual malice" must be established in a defamation claim against a public figure and/or to recover punitive damages. *Gleason v. Smolinski*, 319 Conn. 394, 431 (2015). A statement is made with "actual malice" when it was made "with actual knowledge that it was false or with reckless disregard of whether it was false." *Id.* The Court agrees with the plaintiffs that the defendants' efforts to verify the accuracy of the information that they later publicly disclosed in the press release and during the press conference are relevant to whether the defendants acted with "actual malice."

However, the Court is mindful that a detailed description of "the nature of the research, the sources consulted, the dates of such efforts, and the identities of all persons involved" may require the defendants to disclose their mental impressions or litigation strategy. Such information is work product afforded absolute protection. *See Am. Oversight*, 45 F.4th at 590 ("Rule 26 requires a court ordering discovery of work-product materials to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.") (internal quotation marks omitted). For instance, in the related context of document requests, the Second Circuit explained that, in some narrow circumstances, "the selection and compilation of documents by counsel for litigation purposes is protected opinion work product, . . . but its application depends upon the existence of a real, rather than speculative, concern that the thought processes of [ ] counsel in relation to pending or anticipated litigation would be exposed." *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir. 1982). The Court finds that this reasoning applies to the interrogatory here insofar as requiring

the defendants to disclose the details of their investigation raises a real concern that defense counsel's mental impressions and litigation strategy could be exposed.

The plaintiffs argue that the defendants' responses to other discovery requests—Callis Request for Admission ("RFA") 1 and Callis / Holland Law Interrogatory 2—are contradictory and necessitate a detailed description of the investigation as requested in Callis Interrogatory 6 / Holland Law Interrogatory 5. (Doc. No. 82 at 20). As the plaintiffs point out, the defendants indicated under oath in Callis / Holland Law Interrogatory 2 that they received medical records from the plaintiffs on March 5, April 7, July 16, and August 30 of 2024. (*Id.*; Doc. No. 82-2 at 2; Doc. No. 82-4 at 2). The plaintiffs have also pointed out that, in responding to RFA 1, Callis admitted that, other than Ms. Grant, she "did not interview, consult, or rely upon any other person concerning the accuracy of any statements [she] made about Plaintiffs in the Press Release or Press Conference." (Doc. No. 82-13 at 1). When prompted to admit that she "did not conduct any independent research or investigation to verify the accuracy of the statements," Callis responded: "Defendant cannot provide a response to this request for admission as it is unclear what is meant by the terms 'independent research' or 'investigation.' That objection notwithstanding, denied." (*Id.* at 2). The Court disagrees with the plaintiffs' contention that these discovery responses "cannot be squared" with each other. (Doc. No. 82 at 20). Put another way, RFA 1 speaks to facets but not the entirety of an investigation. It is therefore unnecessary to require the defendants to answer Callis Interrogatory 6 / Holland Law Interrogatory 5 simply to clear up the supposed discrepancy. And, even if there existed a discrepancy, disclosure of opinion work product "requires a far stronger showing of necessity and unavailability by other means." *Loftis v. Amica Mut. Sinc. Co.*, 175 F.R.D. at 11.

For these reasons, the Court SUSTAINS the defendants' objections to Callis Interrogatory 6 and Holland Law Interrogatory 5.

**2. Callis Interrogatories 8-17 / Holland Law Interrogatories 8-17**

Callis/Hollis Interrogatories 8 through 17 contain the same format: first, the phrase "Describe in detail the factual basis for any statement made by You, or on your behalf that. . . ." followed by an alleged defamatory statement made during the press release or Press Conference. (Doc. No. 82-2 at 9-12; Doc. No. 82-4 at 9-12). The defendants disclosed the source of the information—generally Ms. Grant and/or medical records, depending on the interrogatory—but otherwise objected on the grounds of attorney-client privilege and the work product doctrine. (*Id.*). The plaintiffs contend they are seeking facts, not privileged information or work product. (*See* Doc. No. 82 at 15–18). The defendants respond that the plaintiffs are improperly seeking the *substance* of the defendants' privileged communications with their counsel. (Doc. No. 85 at 7).

The plaintiffs must prove that each alleged defamatory statement was false. *See Gleason*, 319 Conn. at 431 (explaining that, to be actionable, a defamatory statement must be false); *Idlibi v. Hartford Courant Co.*, 350 Conn. 557, 573 (2024); (explaining the elements of a defamatory statement are that it is a "(1) false (2) communication (3) that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him"); *see also Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC*, No. 3:22-cv-885 (JAM), 2023 WL 4421769 (D. Conn. July 10, 2023) ("I am persuaded that Connecticut would allow the fair report privilege to extend not only to reports by media entities about court proceedings but also to press releases or other public statements by litigants themselves that recount what they have alleged in official court proceedings."). These interrogatories are therefore relevant to establishing the falsity (or veracity) of each alleged defamatory statement.

It is well-settled that the attorney-client privilege "does not protect against the disclosure of underlying, factual information." *Cadlerock Prop. Joint Venture, L.P. v. Comm'r of Environ. Prot.*, 253 Conn. 661, 675 n.13 (2000) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96 (1981)). Similarly, disclosing the underlying facts will not implicate the work product doctrine, which protects the disclosure of "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). As described by Wright & Miller,

> There is a distinction . . . between documents that a party has assembled and the facts it has learned from those documents. Before 1970, the courts consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery. This has continued to be true under Rule 26(b)(3) . . . .

8A Wright & Miller's Federal Practice & Procedure § 2023 (3d ed. 2026). In other words, the work product doctrine does not extend to the facts sought after in these interrogatories.

While the defendants agree that facts are discoverable, they argue that the information is privileged because it was learned through a privileged communication. (Doc. No. 85 at 7–8). To avoid confusion, the Court SUSTAINS in part and OVERRULES in part the defendants' objections. The defendants must answer Callis/Hollis Interrogatories 8 through 17 but the answers shall be limited to "the discrete factual information that was actually conveyed to the public through the Press Release and Press Conference." (*Id.* at 8). This includes facts that the defendants learned through the client, which then led them to make the statements they made during the press release and press conference. It does not include the content of any privileged conversation that goes beyond the extent of those facts.

**B. <u>Requests for Production</u>**

The Court evaluated the documents submitted for *in camera review* to determine the scope of documents that were relevant and responsive to the discovery requests at issue. As the plaintiffs

correctly point out, the documents that are relevant are those that would tend to prove or disprove the elements of defamation for each alleged defamatory statement. (Doc. No. 86 at 10) ("What Plaintiffs seek – and what Dr. Colker is entitled to – is the basis for the public accusations made against him."). Having reviewed the documents, the Court has identified two categories of documents that are not relevant: (1) documents concerning the WWE Litigation that are unrelated to the alleged defamatory statements Callis made against Dr. Colker or Peak Wellness; and (2) documents related to the Bill of Discovery Action that do not concern Callis's public statements. The documents submitted *in camera* that are not relevant or responsive to any of the Requests include Items 44, 47, 47[1], 56, 56[1], 67, 73, 78, 82, 94, and 97. The Court notes that these documents also contain work product, but because they are not relevant or responsive to the discovery requests at issue, the Court does not address the application of the work product doctrine here.[5]

For all other documents, the Court has determined that they are responsive to one or more Requests and are at least minimally relevant to the claims and/or defenses. Below, the Court discusses whether the documents nonetheless should be withheld as privileged or protected by the work product doctrine.

**1. Callis Request 1 / Holland Law Request 8**

In Callis Request 1 / Holland Law Request 8, the plaintiffs seek "[a]ny documents and communications concerning the receipt, review, or discussion of [Ms. Grant's] medical records received from Plaintiffs." (Doc. No. 82-6 at 2; Doc. No. 82-8 at 2). The defendants object to

[5] The defendants submitted documents *in camera* with each identified by a distinct "Item [#]." Items 44, 47, 47[1] and 94 are work product related to the WWE Litigation that contain mental impressions and litigation strategy. Items 56, 56[1], 67, 73, 78, 82, and 97 are work product concerning the Bill of Discovery Action, such as research, drafting of documents, and litigation strategy. The substance of the work product is not relevant to the defamation claim and the defenses.

producing responsive communications and documents on the grounds of the attorney-client privilege and work product doctrine, explaining that "[a]ny internal discussion between defendant and her staff, colleagues, co-counsel, collaborating counsel or associates regarding defendant's attempts to retrieve Patient's medical records, receive those records, review or discuss those records speak directly to defendant's mental impressions and attorney opinion." (*Id.*). The defendants produced responsive documents that were not subject to the work product doctrine. (*Id.*). The plaintiffs state that "the records themselves are pure fact" but concede that communications and documents reflecting "genuine legal strategy rather than fact" may be withheld as long as they are included in a particularized privilege log. (Doc. No. 82 at 18).

After reviewing the documents *in camera*, the Court finds that Items 19, 39, 77, 80(1), 80(2), and 92, 98 and 99 are relevant and responsive to these Requests. Some of these documents contain privileged communications between counsel and client, and all of them express mental impressions, attorney opinion, and/or legal strategy. The plaintiffs seem to acknowledge that such communications have been properly withheld, given that they focus on obtaining the medical records attached to these emails. (*Id.*). The Court finds that the communications have been properly withheld on the basis of attorney-client privilege and the work product doctrine. *See Am. Oversight*, 45 F.4th at 590–91.

The question is whether the medical records attached to the privileged and protected emails should nonetheless be produced. Of the documents responsive to Callis Request 1 / Holland Law Request 8, Items 19, 39, 77, 92, and 98 contain Ms. Grant's medical records as attachments. The Court is cognizant of the fact that Ms. Grant is not a party to this litigation, yet her medical records are the subject of these Requests. Sometimes, however, litigation requires the production of information that is otherwise confidential, including a non-party's medical records. *See Caines v.*

*Addiction Research & Treatment Corp.*, No. 06Civ.3399(PAC)(MHD), 2007 WL 895140, at *1 (S.D.N.Y. Mar. 20, 2007) ("It is a routine matter in litigation for courts to require production, where necessary, of records that reflect medical treatment of non-parties, sometimes with the identities of the patients redacted.") (collecting cases). Here, Ms. Grant's medical records are clearly relevant to the claims and defenses. Callis stated that Dr. Colker "directed [Ms. Grant] to take mystery pills daily and forced her to accept intravenous infusions of unknown contents" and that "she was getting progressively worse." (Doc. No. 1 ¶ 58). Furthermore, Callis explicitly referenced Ms. Grant's medical records, stating: "Even the records we received that are incomplete show that she was not getting any better with these treatments, with these infusions, with these unknown pills." (*Id.*). The plaintiffs are entitled to view medical records that are relevant to establishing the veracity of Callis's statements.[6]

The Court notes that, in some circumstances, an attachment that is not privileged on its own may nonetheless be subject to the main email's attorney-client privilege, "if disclosure would reveal that it was communicated in confidence to an attorney in connection with the seeking or receipt of legal advice."[7] *Gen. Elec. Co. v. U.S.*, No. 3:14–cv–00190 (JAM), 2015 WL 5443479, at *2 (D. Conn. Sept. 15, 2015); *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *8 (S.D.N.Y. Jan. 24, 2018) ("Whether an attachment to a privileged e-mail is itself privileged will depend on the circumstances. The general standard for the attorney-client privilege applies."). *But*

---

[6] This ruling does not mean the plaintiffs are entitled to a wholesale review of Ms. Grant's medical records. The ruling is limited to these particular discovery requests and the particular records responsive to the requests.

[7] Although state law applies to the attorney-client privilege, the Court finds federal jurisprudence is also persuasive on this topic. *See generally*, *Shew v. Freedom of Info. Comm'n*, 245 Conn. 149, 163 (1998) (explaining, in a different context involving the attorney-client privilege, that the Connecticut Supreme Court is "not bound" by federal jurisprudence "as a matter of state common law" but views it as "persuasive authority").

*see NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-cv-01023 (MPS), 2021 WL 2109112, at *1 (D. Conn. May 25, 2021) (stating that "privilege is assessed separately for emails and attachments") (citing *Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 195 F. Supp. 3d 639, 644 n.5 (D. Del. 2016)). Because Items 19 and 39 involve communications with Ms. Grant, the attachments could arguably be subject to the attorney-client privilege. Assuming, without deciding, that the records are privileged simply because they are attached to privileged emails (which is not at all clear since the records may not relate to the privileged communications), the Court finds that Callis's public statements about Ms. Grant's medical records and the medical treatment she received impliedly waived the privilege as to her medical records. *See Metro. Life*, 249 Conn. at 52–53 ("Because of the important public policy considerations that necessitated the creation of the attorney-client privilege, the "at issue," or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action.").

Accordingly, the defendants' objections as to these Requests are SUSTAINED in part as to the email communications and OVERRULED in part as to the medical record attachments.

**2. Callis Requests 5-14 / Holland Law Requests 12-20**

As with the Callis / Holland Law Interrogatories 8 through 17, Callis Requests 5 through 14 / Holland Law Requests 12 through 20 seek documents relevant and responsive to the defendants' alleged defamatory statements.[8] (Doc. No. 82-6 at 4–7; Doc. No. 82-8 at 6–9). For the same reasons that the Court overruled the defendants' objections as to Interrogatories 8 through 17, the attorney-client privilege and the work product doctrine do not protect against disclosure of "underlying, factual information" in a document or communication that is relevant to a claim or

[8] Callis Requests 5 through 14 are identical to Holland Law Requests 12 through 20.

defense. *See Cadlerock*, 253 Conn. at 675 n.13. (explaining the attorney-client privilege "does not protect against the disclosure of underlying, factual information"); 8A Wright & Miller's Federal Practice & Procedure § 2023 (3d ed. 2026) (stating that the work product doctrine does not "shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned").

The Court has evaluated the *in camera* documents and finds that Items 23–25, 58, and 76 each contain factual information that is not privileged or otherwise protected by the work product doctrine. However, these Items also contain information that is privileged and protected. To balance the plaintiffs' entitlement to the "underlying facts," which are not privileged, with the defendants' need to protect defense counsel's "zone of privacy" to prepare and develop litigation strategy, *Adlman*, 134 F.3d at 1196, the Court evaluated whether the portions of the documents should be redacted.

*Items 23 through 25*. Items 23 through 25 constitute emails from Ms. Grant to her attorneys wherein she forwards Peak Wellness marketing emails. (Doc. No. 81 at 11). The Court finds that Peak Wellness's marketing emails contain facts relevant to the alleged defamatory statements. However, the main email sent by Ms. Grant constitutes privileged information that has not been waived.

The Court begins with each Item's email. Ms. Grant's main email is protected by the attorney-client privilege, because the substance can be properly described as "the giving of information to the lawyer to enable counsel to give sound and informed advice," including the development of legal strategy.[9] *PSE Consulting*, 267 Conn. at 329. Moreover, the Court finds that waiver does not apply here. "Exceptions to the attorney-client privilege should be made only

[9] The Court uses the term "main email" to describe the primary email at the top of the PDF to which documents are attached or an email thread is connected.

when the reason for disclosure outweighs the potential chilling of essential communications." *Metro. Life*, 249 Conn. at 52. Upon examining the contents of the communications between Ms. Grant and her attorneys, the Court finds that the privilege has not been waived. Specifically, the contents of the email communication have not been placed "at issue," because the information is not required to resolve the claims or defenses. *See id.* at 53.

The Peak Wellness marketing emails, which were forwarded to counsel, contain non-privileged facts that are at least minimally relevant and responsive to the plaintiffs' Requests. The Court is cognizant of the principle that any "public document that a client sends a lawyer might be subject to a claim of privilege if disclosure would reveal that it was communicated in confidence to an attorney in connection with the seeking or receipt of legal advice," *Gen. Elec. Co.*, 2015 WL 5443479, at *2; *see Durling*, 2018 WL 557915, at *9 (explaining that, when an e-mail includes a string of other related e-mails—and only some of the information is privileged—the party must redact the privileged information and produce the portion of the document that is relevant and not privileged). However, having evaluated the marketing emails and the communications, the Court finds that they would not reveal anything about the privileged main communication. Therefore, the Court finds the Peak Wellness marketing emails must be produced. *See Cadlerock*, 253 Conn. at 675 n.13 (2000).

For these reasons, the objection is SUSTAINED in part and OVERRULED in part as to Items 23 through 25. The Peak Wellness marketing emails must be produced with the main emails redacted.

*Items 58 and 76*. Items 58 and 76 are email communications between counsel and The Agency Group that include mental impressions, opinions, and legal strategy concerning the Bill of Discovery Action. The work product doctrine is not automatically waived simply because a

communication includes consultants from a public relations firm. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019) ("The work product doctrine protects materials prepared not only by attorneys but also by their agents."). This is particularly true where "the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

However, the work product doctrine's protection can be "involuntarily forfeited" or waived out of fairness to the adversary, if the party "advances a claim [or defense] . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim [or defense]." *New York Times Co.*, 939 F.3d at 495. The Court must assess the implied waiver for "*specific* instances of unfairness" on a "case-by-case basis." *Id.* at 496 (emphasis added). In comparing the alleged defamatory statements in the complaint to the contents of these particular communications, the Court finds that considerations of fairness do not require the disclosure of the particular content in Items 58 and 78. Accordingly, the objection is SUSTAINED as to Items 58 and 76.

**3. Holland Law Requests 1, 5–7, 10**

Finally, the plaintiffs seek documents and communications responsive to Holland Law Requests 1, 5 through 7, and 10, which are best categorized as press-related Requests. (Doc. No. 82-8 at 2–4, 6). The Court evaluated the documents flagged for *in camera* review and has determined that the following are relevant and responsive to these Requests: Items 14–17, 45, 45[1], 46, 46[1], 90(1), 90(2), 91, 93, 95, 96, 100–106.

*Items 14–17*. The Court agrees with the defendants' description that these documents concern communications between Grant, her attorneys, and The Agency Group about media

strategy for the WWE Litigation. (Doc. No. 81 at 11–13). As the defendants point out, the only relevant portion of these documents concerns the same, single paragraph from Item 14, which is work product created by the public relations firm regarding "strategy for managing public relations in light of the litigation" brought by Ms. Grant. (*Id.* at 13). Although the defendants maintain that Items 14 through 17 are privileged, they offer an alternative, "proportional solution," which is to "disclose Item 14, properly redacted so as to only disclose the information which may be potentially relevant to this matter." (*Id.* at 14). Typically, courts do not permit the redaction of non-responsive or irrelevant information. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014). However, because these documents concern litigation strategy of another ongoing matter brought by a non-party, the Court finds that this circumstance warrants the production of Item 14 with the partial redactions proposed by the defendants. Accordingly, the defendants' objections are OVERRULED in part and SUSTAINED in part as to Items 14 through 17.

*Items 45, 45[1],46, 46[1].* These Items are emails that SKDK sent to Ms. Grant. "A lawyer or client may share a privileged communication with a media or public relations expert without waiving the privilege if the attorneys are 'using the public relations consultant 'to implement a specific legal strategy that require[s] the use of a public relations consultant.'" *Lively v. Wayfarer Studios, LLC*, No. 24-cv-10049(LJL), 2025 WL 2606904, at *5 (S.D.N.Y. Sept. 9, 2025). In these emails, SKDK is communicating information about the legal strategy on behalf of Ms. Grant's counsel. The Court finds that waiver does not apply because the information is not "integral to the outcome of the [defamation claim]." *Metro. Life*, 249 Conn. 36 at 53. Accordingly, the Court SUSTAINS the objections as related to the communications in Items 45, 45[1],46, and 46[1].

The Court notes, however, that Items 45 and 45[1] include the press release as an attachment. This document should be produced for the same reasons that the production of other attachments has been ordered. *See Gen. Elec. Co.*, 2015 WL 5443479, at *2; *Durling*, 2018 WL 557915, at *9.

*Items 90(1), 90(2), 91, 93, 95, 96, 100–106.* These Items are email communications between counsel and SKDK—some of which include documents prepared by SKDK—regarding press for the WWE Litigation and the Bill of Discovery Action. The Court finds that all of these Items are subject to the work product doctrine insofar as the team's strategy about the press is intertwined with their litigation strategy. *Calvin Klein*, 198 F.R.D. at 55.

However, the Court finds that the protection for documents created by SKDK has been impliedly waived. Much of the content is directly related to the public statements that Callis made. *See New York Times Co.*, 939 F.3d at 495. Indeed, the information that she prepared to say goes to the heart of her state of mind at the time she made the alleged defamatory remarks. This includes press-related documents concerning events that took place prior to the press conference and press release at issue, as the consistency or variation of her statements could also tend to prove or disprove "actual malice."

The Court SUSTAINS in part and OVERRULES in part the defendants' objections. In balancing the fairness to the plaintiffs, *see id.*, along with the fact that the documents relate to the ongoing WWE Litigation, the Court finds that the substance of the communications may remain redacted along with the substance of the documents that *does not* concern Dr. Colker or Peak Wellness. Because Items 90(1), 96, 100–105 do not contain any attachments of SDKS-created documents, the defendants should not produce them. For Items 90(2), 91, 93, 95, and 106, the defendants shall produce redacted versions with the following information not redacted: (1) the

main email sent by SKDK, which does not contain substantive information about litigation strategy; (2) the header of each SKDK-created document; and (3) the sections of each SKDK-created document that explicitly reference either plaintiff.

## IV. <u>CONCLUSION</u>

For the above reasons, the plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART. The Court ORDERS the following:

As to Callis Interrogatory 6 / Holland Law Interrogatory 5, the defendants' objections are SUSTAINED.

As to Callis Interrogatories 8-17 / Holland Law Interrogatories 8-17, the defendants' objections are SUSTAINED in part and OVERRULED in part, and the defendants are ordered to answer the interrogatories consistent with this Court's ruling.

As to Callis Request 1 / Holland Law Request 8, the defendants' objections are SUSTAINED in part and OVERRULED in part. The Court orders the production of the medical records attached to Items 19, 39, 77, 92, and 98. Otherwise, Items 19, 39, 77, 80(1), 80(2), 92, 98, and 99 have been properly withheld.

As to Callis Requests 5-14 / Holland Law Requests 12-20, the defendants' objections are SUSTAINED in part and OVERRULED in part. The Court orders the production of the Peak Wellness marketing emails included in Items 23, 24, 25. Otherwise, Items 23, 24, 25, 58 and 76 have been properly withheld.

As to Holland Law Requests 1, 5–7, 10, the defendants' objections are SUSTAINED in part and OVERRULED in part. Items 14, 90(2), 91, 93, 95, and 106 should be produced with partial redactions consistent with this ruling. The attachment of Items 45, 45[1] should be produced. Otherwise, Items 15, 16, 17, 45, 45[1], 46, 46[1], 90(1), 96, 100–105 have been properly withheld.

Finally, Items 44, 47, 47[1], 56, 56[1], 67, 73, 78, 82, 94, and 97 have been properly withheld on the ground that they are not relevant or responsive to the discovery requests.

All production ordered herein must be completed on or before **November 12, 2026.**

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

It is so ordered this 29th day of October, 2026, at New Haven, Connecticut.

/s/ Robert M. Spector, U.S.M.J.
ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE